ACE MOTOR FREIGHT, INC.,
Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

Freeport Transport, Inc., Intervenor.

No. 76–1008.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 4, 1977.

Decided May 23, 1977.

Chester A. Zyblut, Washington, D. C., with whom Karl W. Sonneman, Washington, D. C., was on the brief, for petitioner. Mark Andrews, Washington, D. C., also entered an appearance for petitioner.

Mary Swann, Atty., I. C. C., Washington, D. C., for respondents. Robert S. Burk, Acting Gen. Counsel, I. C. C., Charles H. White, Jr., Associate Gen. Counsel, and Alan J. Thiemann, Atty., I. C. C. Lloyd John Osborn, Washington, D. C., entered an appearance for respondent, United States of America.

Leonard A. Jaskiewicz and William H. Shawn, Washington, D. C., entered appearances for intervenor.

Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

Ace Motor Freight, Inc. petitions this court for review of an order of the Inter-

state Commerce Commission which denied its application for a certificate of public convenience and necessity to transport refractory and clay products and materials from Columbiana, Ohio, Frostburg, Maryland, and Summerville, Pennsylvania to various destination states in the eastern half of the United States. *Ace Motor Freight, Inc., Extension—Refractories*, No. MC–124802 (Sub-No. 11) (ICC April 25, 1975). We affirm the Commission's order insofar as it denied Ace the authority sought to and from Summerville but vacate it insofar as it denied Ace's application for authority from Columbiana and Frostburg.

I

■ One day after Ace had filed its application, Joseph W. Trehan, Inc. filed one seeking authority from Columbiana and Frostburg identical to that sought by Ace [1] but for certain minor restrictions.[2] It did not seek any other authority. The Commission employed its modified procedure in handling the Ace and Trehan applications, pursuant to which verified statements and rebuttals were submitted by the two applicants, various protesting motor carriers, and by Kaiser Refractories, a shipper that supported both applicants' request for authority from Columbiana and Frostburg. Another shipper, Hanley Company, Inc., supported that portion of Ace's application which sought authority to and from Summerville. Both applications eventually were consolidated and disposed of by a sin-

gle report of the Commission's Review Board Number 2. *Joseph W. Trehan, Inc., Extension—Refractories*, No. MC–37578 (Sub-No. 23) (ICC April 25, 1975).[3] The Ace application was denied in its entirety; the Trehan application was granted in part. Ace now argues, as it did in its petition for reconsideration to the Commission,[4] that this action was arbitrary and an abuse of the Commission's discretion inasmuch as the agency treated similarly-situated applicants dissimilarly. We must agree.

In its briefs and oral argument to this court, Ace urged that a recent fourth circuit decision, *Contractors Transport Corp. v. United States*, 537 F.2d 1160 (4th Cir. 1976), was on "all fours" with the case *sub judice*. In *Contractors* two carriers applied for a certificate of convenience and necessity to transport iron and steel items from Roanoke and Troutville, Virginia to various states. Contractors desired to transport these items to points in Maryland, West Virginia, the District of Columbia, Delaware and Kentucky. The other applicant, Russell Transfer, Inc., sought authority to points in Maryland, West Virginia, the District of Columbia, New Jersey, North Carolina, South Carolina and Pennsylvania. Thus, both Contractors' and Russell's applications were congruent as to Maryland, West Virginia and D.C. Noting that these two applications "involve the same origins, similar commodities, essentially the same destination States and, in one instance, the same shipper," *id.* at 1161, the Commission

---

1. Ace and Trehan both sought authority to transport refractory and clay products and materials from Columbiana, Ohio to: Connecticut, Delaware, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, Virginia and West Virginia. They sought to transport the same commodities from Frostburg, Maryland to : Connecticut, Delaware, Illinois, Indiana, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Wisconsin and the District of Columbia. *See* Petitioner's Brief at 5–6; Appendix at 138–39.

2. These restrictions are noted in the Commission's report, Appendix at 138–39, but no con-

clusions are drawn therefrom. Thus, they cannot serve as a basis for justifying the inconsistent treatment challenged by petitioner.

3. The Commission has decided not to reprint this report in its permanent series of the Motor Common Carrier reports. The United States, a statutory respondent, chose not to join in the Commission's brief to this court and neither supports nor opposes the order under review in this appeal.

4. Division 1 of the Commission, acting as an Appellate Division, denied Ace's petition for reconsideration and affirmed the report of Review Board Number 2 in all respects. *See* Appendix at 178.

considered the applications under its modified procedure, and consolidated and disposed of them in one report and order—the same procedures used in dealing with the Ace and Trehan applications.

The ICC, however, denied Contractors' application in its entirety and granted Russell's in its entirety, so as to the overlapping authorities sought in Maryland, West Virginia and D.C., the Commission was obliged to establish a rational basis for distinguishing between the two. Both applications were supported by the same shipper, but another carrier which was authorized to cover "most of the areas for which Contractors sought authority," *id.*, protested Contractors' application but did not protest Russell's. The fourth circuit analyzed the situation as follows:

> The Commission concluded that the evidence established a need for transportation service in the areas covered by the applications and that each applicant had proved a prima facie case. It held, however, that [a protestant] was adequately and efficiently meeting transportation needs from Roanoke and Troutville to points in Delaware, Kentucky, Maryland, West Virginia and the District of Columbia. Accordingly, it denied Contractors' application to serve those states. On the other hand, without reference to the adequacy of [the protestant's] service, the Commission granted Russell's application to carry articles . . . to a number of points, including Maryland, West Virginia and the District of Columbia.

> .     .     .     .     .

> The Commission's decision does not meet these requirements [of rationality]. Under substantially similar circumstances, Contractors and Russell received markedly different treatment. The Commission stated no basis for its uneven disposition of the two applications, nor did it indicate why [the protestant's] existing service was adequate to exclude Contractors, but not Russell, from serving destinations in Maryland, West Virginia, and the District of Columbia.

*Id.* at 1161–62. The Commission's order was vacated and the case remanded for reconsideration and, in the event it did not alter its order, for a statement of reasons justifying its apparently inconsistent treatment of the two applicants.

We believe that *Contractors* was correctly decided, and the Commission does not argue otherwise. Rather it attempts to distinguish Ace's situation from that of Contractors' by contending on appeal that Ace's evidence did not establish any public need for its proposed service whereas Contractors' evidence did. Government's Brief at 19–20. The problem with this argument, however, is that it cannot be reconciled with the substantial similarity of the overlapping requests and the Commission's determination that such a need was proven by Trehan as to certain proposed destinations also sought by Ace.

Both Ace and Trehan applied for authority to transport identical products from Columbiana to points in Delaware, Virginia and thirteen other states. The ICC denied all such authority to Ace but granted Trehan authority limited to Delaware and Virginia. Secondly, both requested authority to transport the same products from Frostburg to points in Delaware, Illinois, Indiana, Michigan, Wisconsin, D.C. and eleven other states. Again Ace's application was denied but Trehan's was granted as to the above named states and the District of Columbia. Such inconsistent treatment is not necessarily "arbitrary and capricious". *See* 5 U.S.C. § 706(2)(A) (1970). Some rational basis for the disparate treatment, however, must be discernible from the Commission's opinion. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 290, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). That basis perforce would entail a Commission determination supported by substantial evidence and set forth somewhere in its report that the two applicants in fact were not otherwise similarly situated. None appears in this case.

Seven potential competitors filed verified statements in opposition to the Ace applica-

tion. Of these, three carriers[5] were deemed irrelevant to the Commission's decision because they either tacked to serve the destination states sought or transported traffic other than that applied for. Government's Brief at 15 n. 8. Of the remaining four protestants, Deioma Trucking Co. held authority from Columbiana to every destination state except Delaware, New Jersey and Virginia and from Frostburg to Ohio, Helm's Express held authority from Columbiana to every destination state except Maine and Vermont, J. Miller Express, Inc. held authority from Columbiana to points in New York, Pennsylvania and West Virginia, and Chem-Haulers, Inc. held authority from Frostburg to all destination states.

Trehan's application on the other hand was protested by six potential competitors, including two which also opposed Ace's application.[6] Of these, two were deemed irrelevant.[7] Of the other four, Deioma again was one, Butler Trucking Co. held authority from Columbiana to New Jersey and from Frostburg to New York, New Jersey, Pennsylvania, Maryland, Maine, Vermont, New Hampshire, Massachusetts, Connecticut and Rhode Island, and Short Freight Lines, Inc. and Red Line Express, Inc. both held authority from Columbiana to Michigan.

The ultimate result of the protests filed with the Commission therefore was essentially this. Ace's application was denied in its entirety because (1) the Commission found that the protestants' authorities covered the entirety of that sought by Ace (i. e., Deioma, Helm's and J. Miller taken together covered all those sought from Columbiana, while Chem-Haulers covered all those sought from Frostburg and Deioma again further covered that sought from Frostburg to Ohio), and (2) it found that these protestants reasonably could handle the commodities of the single supporting shipper, Kaiser. Trehan's application, how-ever, was granted from Columbiana to Delaware and Virginia because neither Deioma, Butler, Short Freight or Red Line operated there—though they operated to all the other states—and was granted from Frostburg to Delaware, Illinois, Indiana, Michigan, Wisconsin and the District of Columbia because none of its own protestants operated there—though they too went to all of the other states sought.

■ The trouble with this, of course, is that it completely ignores the obvious fact that Helm's and Chem-Haulers, which only protested the Ace application, were found by the ICC in the same proceeding to have existing authorities to all of the states ultimately granted to Trehan, but denied to Ace, and to have the necessary capability of handling the commodities of the same supporting shipper. Surely a finding that these protestants have similar existing authorities and are fit and willing to do the same job would logically preclude a grant to Trehan as well as to Ace. Each application cannot be treated as if the other does not exist; to do so results in an absurdity.

■ From our review of the Commission's report in this proceeding, then, we find that the only thing that materially distinguishes Ace's application from Trehan's as to certain congruent authorities sought is the fact that two of the protestants to the Ace application chose not to protest the same authorities requested in the Trehan application. Why, we do not know, but as the Commission states in its brief, it doubtlessly was a "business decision." Government's Brief at 20 n. 11. It may reasonably be presumed, we think, that the bottom line of any business decision is the enhancement of competitive advantage, or at least the minimization of competitive disadvantage, and as it appears from the Commission's report that Ace is by far the larger of the two companies, Appen-

---

**5.** These carrier-protestants were Jones Transfer Co., Mercury Motor Express, Inc., and Freeport Transport, Inc.

**6.** Deioma and Jones protested both applications. *Id.* at 139.

**7.** These were Jones again and W & W Express Co., Inc. which was merged into Jones in May, 1974, some seven months after Ace filed its application. *See id.* at 148 n. 3.

dix at 40–41, one may reasonably conclude that these potential competitors believed they had more to lose in competition with Ace than with Trehan. To permit Commission action, in effect, to be determined by the business decisions of potential competitors would be to countenance the agency's total abdication of the responsibilities entrusted to it by Congress.

■■■ On appeal the Commission offers the following explanation for its different treatment of the two applications:

> The reasons for the limited grant of authority to Trehan were the better evidence presented by Kaiser in support, as indicated by a comparison with its evidence in support of Ace, and the showing that there no [sic] existing carriers already conducting operations to several destination states. . . . This, a showing of need, is what Ace failed to do as to its application vis-a-vis its supporting shipper.

Government's Brief at 22–23.

The Commission's report, however, does not distinguish between the evidence provided by the supporting shipper in behalf of the two applicants. *Compare id.* at 16–17. It simply recites that evidence at one point and at another conclusorily asserts that one application should be denied *in toto* and the other granted in part. The "better evidence" in support of Trehan is not given as a reason for the inconsistent treatment, *see* Appendix at 152–56; in fact, the report never states that the evidence was better. We may uphold an agency's decision only upon rationales that may be discerned therein. *Post hoc* rationalizations by imaginative government counsel do not suffice. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Furthermore, even if the Commission had found better shipper support for the Trehan application, it could not rationalize its inconsistent treatment on that basis alone. Under prevailing ICC law, other factors must at least be considered.

Where, as here, a need is shown for a new transportation service and a number of carriers proffer their services to meet such need, it is the function of this Commission to determine, in furtherance of the aim of the national transportation policy, which applicants should receive grants of additional authority. While shipper support is a factor for consideration when choosing among competing applicants, determination of the issue of public convenience and necessity is not within the province of a shipper. In proceedings wherein more than one carrier proffer their services to meet the need of a supporting shipper, those applicants supported by the shipper do not automatically prevail over those not supported, and the fact of shipper support for one or less than all of such applicants does not control the Commission's determination with respect to the quantum of service needed by the shipper.

In determining which of a number of competing applicants should receive additional grants of authority, the factors for consideration include the existing authorities and operations of the applicants, the location of their terminal facilities, and the equipment they operate.

*Best Truck Lines, Inc., Extension—Emporia,* 98 M.C.C. 202, 207 (1965) (citations omitted). *See Iowa Beef Packers, Inc. v. United States,* 297 F.Supp. 1156, 1158–59 (N.D. Iowa 1969); *Deaton, Inc., Extension—River Points,* 107 M.C.C. 214, 246 (1967). Nothing in the report indicates that these other factors were considered by the Commission in differentiating between the two applications.

■ As to the argument on appeal that there was a "showing" that no existing carrier was already conducting operations to the several destination states granted to Trehan, it may fairly be characterized as *post hoc* hallucination for the only showing was exactly to the contrary. We perceive no policy that might justify the Commission's attempt to maintain a "Chinese wall" in passing upon these applications in the same proceeding. *See generally Ashbacker*

*Radio Corp. v. FCC*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). Nor do we understand why the Commission persists in maintaining before this court that it need not consider the evidence of protestants "collectively as if on a single record" when its current practice is to do just that. *Riss International Corp. Extension—Cactus Meat*, No. MC–200 (Sub-No. 265) (August 25, 1976). Counsel for the Commission argues that the two applications were consolidated for "disposition" only, so as simply to facilitate administrative handling. Still, we are not persuaded that such a procedural nicety alone adequately rationalizes the disparate treatment of the applications in this case, especially in the absence of regulations that impart some substance to it. The applications here were consolidated, as reasonably befitted their similarity of subject matter, and that condition logically requires the Commission to provide us and the applicants with a rational explanation of the inconsistency in outcomes where, as here, the disparate treatment has not been justified by reference to some relevant factual distinction.

■ Since the Commission's report and order fail to evidence a rational basis for the inconsistent treatment accorded the Ace and Trehan applications, we vacate it *pro tanto* and remand the case for reconsideration. In the event the Commission decides not to depart from its previous result in disposing of these applications, it must justify that course with a reasoned explanation supported by substantial evidence in the record as it presently exists or as supplemented by evidence relevant to the *status quo ante*.

## II

■ Ace also challenges the Commission's order denying that portion of its application which sought authority to transport various commodities from Summerville, Pennsylvania to points in fourteen destination states.[8] This portion of Ace's application was supported by one shipper, Hanley, and opposed by three carriers, Deioma, Mercury and Chem-Haulers. The Commission found that Mercury and Chem-Haulers together had authority to serve all the destination states sought in Ace's Summerville request,[9] and there is substantial evidence to support the Commission's conclusion that Ace failed to carry its burden of proving that there was a public need for its proposed service. Indeed, the supporting shipper made no effort whatsoever to use these existing carriers and has offered no reason for its not doing so. That it may be willing or may desire to use Ace's proposed service is not sufficient to establish the requisite public need. We therefore do not disturb the Commission's decision regarding this portion of the Ace application.

## III

■ The Commission enjoys considerable but not illimitable discretion in determining what constitutes public convenience and necessity in any given set of circumstances. *ICC v. Parker*, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). In this case, however, we conclude that it has trespassed across the limits of its lawful discretion. For the reasons discussed above, we affirm the Commission's order in this proceeding to the extent it denied Ace's application from Summerville, Pennsylvania but vacate it insofar as it denied that application's request for authority from Columbiana, Ohio and Frostburg, Maryland.

*So ordered.*

---

**8.** Petitioner in its brief concedes that the ICC was correct in finding that its evidence concerning inbound traffic to Summerville failed to establish a *prima facie* case, and consequently it limits its appeal here to the denial of outbound authority from Summerville. Petitioner's Brief at 22.

**9.** Chem-Haulers served all destination states, and Mercury served three of them. Deioma claimed authority to serve three such states, but it could only do so by tacking.