WILLIS SHAW FROZEN EXPRESS, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Iowa Beef Processors, Inc., Colonial Refrigerated Transportation, Inc., Intervenors.

No. 77–1689.

United States Court of Appeals, District of Columbia Circuit.

Argued June 12, 1978.

Decided Nov. 2, 1978.

Gerald K. Gimmel, Gaithersburg, Md., for petitioner; James E. Savitz and Steven L. Weiman, Washington, D. C., were on brief, for petitioner.

L. Marie Guillory, Atty., I. C. C., Washington, D. C., with whom Mark L. Evans, Gen. Counsel and Charles H. White, Jr., Associate Gen. Counsel, Washington, D. C., were on brief, for respondents.

E. Stephen Heisley, Washington, D. C., was on brief, for intervenor, Colonial Refrigerated Transp., Inc.

John J. Powers, III and James F. Ponsoldt, Attys., Dept. of Justice, Washington, D. C., for respondent, United States of America.

Eugene D. Anderson, Washington, D. C., for intervenor, Iowa Beef Products, Inc.

Before TAMM and MacKINNON, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by MARKEY, Chief Judge.

MARKEY, Chief Judge:

Willis Shaw Frozen Express, Inc. (Shaw) petitions for review of an order of the Interstate Commerce Commission (Commission) of July 22, 1977. We affirm.

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

The order partially denied Shaw's application for a certificate of public convenience and necessity, filed pursuant to Section 207 of the Interstate Commerce Act, 49 U.S.C. § 307. The application sought permission to operate as a common carrier, by motor vehicle, over irregular routes, transporting meats, meat products and by-products, and articles distributed by meat packinghouses, as described in Sections A and C of Appendix I to the report in *Descriptions in Motor Carrier Certificates*, 61 M.C.C. 766 (except hides and commodities in bulk), from and originating at the plant site and storage facilities used by the supporting shipper, Iowa Beef Processors, Inc. (IBP), at Amarillo, Texas, to points in the United States (except Alaska and Hawaii).[1]

## BACKGROUND

Shaw's application, *Willis Shaw Frozen Express, Inc., Extension-Amarillo, Texas*, No. MC–117119 (Sub No. 505), was filed June 18, 1974, and was eventually consolidated with the application of 54 other carriers under the caption of Docket No. MC–200 (Sub No. 267), *Riss International Corp., Extension-Amarillo, Texas*. All the applications were prompted by the opening, in October 1974, of IBP's new beef packing plant at Amarillo, scheduled to be the world's largest producer.

Of the 55 participating applicants, five sought contract carrier authority, and the remainder, including Shaw, sought common carrier authority. Shaw alone sought authority to all points in the contiguous 48 states.[2]

Hearings were conducted before an Administrative Law Judge (ALJ). Nine motor carriers participated in the proceedings as protesting parties in opposition to various applications.[3] IBP intervened in support of Shaw's application before the Commission.

The ALJ's decision granted contract carrier authority to one applicant and common carrier authority to nine carriers. It completely denied all remaining applications, including Shaw's.[4]

Shaw and several other carriers filed exceptions to the ALJ's decision. Before a determination on those exceptions, Shaw was granted temporary authority, in Docket No. MC–117119 (Sub No. 571TA), to transport from IBP's plant site and storage facilities to points in 36 states and the District of Columbia.

On December 21, 1976, Division 1 of the Commission largely reversed the ALJ's decision and granted additional common carrier authority to 42 carriers and contract carrier authority to four carriers. 126 M.C.C. 189. Shaw was granted authority to points in California, Idaho, Montana, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, and Wyoming but denied authority to the remaining 38 states.

Shaw petitioned the Commission for reconsideration, seeking a full grant of authority. Shaw requested that official notice be taken of the granting of its temporary authority, and that the record be reopened for reception of evidence of its performance under that temporary authority. In its petition, Shaw contended that the Commission failed to state a reason for partially denying Shaw's application.

On July 22, 1977, Division 1 of the Commission denied the petition, a "final agency action" under Section 704 of the Administrative Procedure Act, 5 U.S.C. § 704. Shaw then filed the present petition

---

1. Shaw's application, as initially filed, was not restricted to traffic originating at IBP, but was later so restricted by amendment.

2. Processed Beef Express, a subsidiary of IBP, sought and received *contract* carrier authority to all points in the United States.

3. Among the protestants before the Commission was Colonial Refrigerated Transportation, Inc. intervening respondent before this court.

4. The ALJ based his decision largely upon statements made by IBP during temporary authority proceedings, to the effect that its present requirements could be met by the continued services of the carriers, then holding temporary and permanent authority to serve its plant. Treating such statements as admissions against interest, the ALJ found no justification for concluding that IBP required the services of any of the other applicants.

for review of the Commission's order of July 22, 1977.[5]

## ISSUES

The issues are (1) whether the Commission provided a rational basis supported by substantial evidence in the record for its partial denial of Shaw's application, and (2) whether the Commission properly refused to take official notice of Shaw's temporary authority and to reopen the record for reception of evidence thereon.

## OPINION

### I. PARTIAL DENIAL

The principal thrust of Shaw's petition before us is that the treatment accorded it by the Commission fails to comport with the requirement set forth in *Ace Motor Freight, Inc. v. ICC*, 181 U.S.App.D.C. 236, 557 F.2d 859 (1977), that there be a rational basis discernible from the Commission's report for disparate treatment of similarly situated parties seeking the same authority. We disagree.

In *Ace*, two motor carriers, Ace and Tehran, sought essentially identical authority to transport the same products from the same origins to the same destination states. Ace's application was denied in its entirety; Tehran's was granted in part. Respecting that differing treatment, this court stated:

Such inconsistent treatment is not necessarily "arbitrary and capricious". *See* 5 U.S.C. § 706(2)(A) (1970). Some rational basis for the disparate treatment, however, must be discernible from the Commission's opinion. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 290, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). That basis perforce would entail a Commission determination supported by substantial evidence and set forth somewhere in its report that the two applicants in fact were not otherwise similarly situated. None appears in this case.

*Id.* at 239, 557 F.2d at 862. In reviewing the Commission's report for evidence that the two applicants in *Ace* were not similarly situated, this court found the only material distinction to be that two of the parties who protested Ace's application chose not to protest Tehran's application. That distinction was not deemed a relevant factual distinction sufficient to justify the disparate treatment.[6]

■■■■ On Appeal in *Ace*, the Commission cited the better evidence given by one of the supporting shippers in support of Tehran. *Id.* at 241, 557 F.2d at 864. The court noted that the cited basis for differential treatment was nowhere stated in the Commission's report,[7] and that, if it had been, the Commission could not rely upon it alone because other factors must at least be considered.[8] "In determining which of a num-

5. The effect of the Commission's July 22, 1977, order was to terminate, on August 6, 1977, part of Shaw's temporary authority. Shaw petitioned the Commission for a stay of its order and a finding that the partial denial of its application involved on issue of General Transportation Importance. On August 5, 1977, the Commission denied a stay. Shaw then filed a motion in this court for a stay pending judicial review, which was granted in a per curiam order of August 5, 1977. The Commission denied Shaw's petition for a finding of an issue of General Transportation Importance on August 19, 1977. This court, on September 26, 1977, entered a per curiam order vacating its prior order of August 5, 1977, and denying Shaw's motion for stay of the Commission's order of July 22, 1977.

6. The choice between protesting the Ace application and not the Tehran application was

characterized by the Commission in *Ace* as a "business decision," Ace being much larger than Tehran. This court said, "To permit Commission action, in effect, to be determined by the business decisions of potential competitors would be to countenance the agency's total abdication of the responsibilities entrusted to it by Congress." *Id.* at 241, 557 F.2d at 864.

7. The courts may not accept post hoc rationalizations for agency action. An agency's discretionary order must be upheld on the bases articulated in the order by the agency itself. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

8. Shipper support is not controlling in the Commission's determination with respect to the amount of service required by the shipper. *See* note 6 *supra*.

ber of competing applicants should receive additional grants of authority, the factors for consideration include the existing authorities and operations of the applicants, the location of their terminal facilities, and the equipment they operate." *Best Truck Lines, Inc., Extension-Emporia,* 98 M.C.C. 202, 207 (1965). Nothing in the report in *Ace* indicated that these other factors were considered by the Commission in differentiating between the Ace and Tehran applications. *Id.* at 241, 557 F.2d at 864. This court, unable to discern in the Commission's order a rational basis for treating Ace differently from Tehran, vacated the order and remanded the case for reconsideration.[9]

The action of the Commission in partially denying Shaw's application differs markedly from the Commission's action in *Ace.* The Commission's report in the instant case clearly indicates that the general factors of *Best Truck Lines, Inc., Extension-Emporia, supra,* and the more specific criteria of *Southwest Freight Lines, Extension-Colorado Origins,* 108 M.C.C. 148, 153–54 (1968), were applied in reaching its determination:

Where, as here, a need is shown for a new transportation service and a number of carriers proffer their services to meet such need, it is the function of the Commission to determine, in furtherance of the aims of the national transportation policy, which applicants should receive grants of additional authority. In making this determination the factors for consideration include the existing authorities and operations of the applicants, the location of their terminal facilities, and the equipment they operate. *Best, supra,* 98 M.C.C. at 207 . . . .

In a multiple-application proceeding requesting authority to transport meat products, the Commission formulated the following criteria, none of which is solely determinative, and each of which must be construed in the light of the evidence adduced: (1) the availability of applicants' motor vehicle equipment, including the quantum operated and the type nec-

essary for the proposed operations, within an area in reasonable proximity to the point of origin; (2) coupled with the availability of equipment, the present certificated operations of the applicants within the territory sought in their respective applications; (3) the location and the proximity of each applicant's terminal facilities to the proposed origin; (4) the supporting shipper's present and future transportation needs—volume, frequency of movements, type of service, et cetera—to specified regions of the country and the availability of existing services relative to the quantum and scope of new authority required in individual States; (5) the extent of the respective applicants' participation and experience in transporting the involved commodities; (6) priority in the filing of the respective applications; (7) shipper support of the respective applications; and (8) the extent and nature of the opposition to the respective applications. *Southwest Freight Lines, Ext.—Colorado Origins,* 108 M.C.C. 148, 153–154 (1968); and *Aero Trucking, Inc., Ext.—Iron and Steel Articles,* 121 M.C.C. 742, 753 (1975).

126 M.C.C. at 198–99.

The mere listing of the potentially determinative criteria set forth in *Best* and *Southwest* would not alone supply a rational basis. The Commission's report in the present case, however, goes on to reflect application of the criteria to Shaw and others:

Our decision as to which motor common carriers receive authority is grounded upon the criteria enumerated in the *Best* and *Southwest* cases cited[4] above. In

[4] See pertinent information for each applicant in Appendix A.

those instances where an applicant is granted only a portion of the authority requested, the determinative factors are the geographical focal point of its existing operations, terminals, and ability to backhaul traffic.

**9.** The Commission gave as a second reason the showing that no existing carrier was already serving the destination states granted to Teh-

ran. This court found the only showing to have been exactly to the contrary. *Id.* at 241, 557 F.2d at 864.

126 M.C.C. at 200. The applied factors were found determinative by the Commission with respect to Shaw and all applicants granted less than the full authority requested. The pertinent information in Appendix A pertaining to Shaw reads as follows:

(23) No. MC–117119 (Sub-No. 505).—Willis Shaw Frozen Express, Inc. (Willis Shaw), of Elm Springs, Ark.—June 18, 1974, as amended—common—from the IBP plant to points in the United States (except Alaska and Hawaii), restricted to the transportation of shipments originating at the IBP facilities, at or near Amarillo. Willis Shaw operates 361 tractors and 453 trailers and holds authority throughout the United States. It serves other area meat processors to the Northwest and terminates about 140 units a month in the Amarillo area.

126 M.C.C. at 213.

The ten-state area for which Shaw was granted authority roughly approximates the area to the Northwest of Amarillo. The partial grant to Shaw was thus in accord with the geographical focal point of its extant service for meat processors in the Amarillo area. Broadening Shaw's authority, permitting it to serve IBP in roughly the same areas in which it was already serving other Amarillo-area meat processors, while avoiding the creation of a new geographical focus for Shaw's operation from the Amarillo area, was thus a rational choice for the Commission to make.

█ The differences between Shaw and the other applicants granted authority in the states denied to Shaw, together with Shaw's being the only applicant for common carrier authority to all points in the contiguous 48 states,[10] establish that Shaw and such other applicants were not "similarly situated," as that term was used in *Ace.* The determination that Shaw was not "similarly situated" was supported by evidence and articulated in the Commission report itself.

█ Petitioner's reply brief includes a summary of certain data from the record and alleges that it demonstrates disparate treatment of Shaw and other applicants respecting four destination states denied to Shaw. That comparative summary, however, merely indicates that the record might support a different conclusion. Where the issue is whether an agency's action is arbitrary, capricious, and an abuse of discretion, the scope of review is narrow, and the court may not substitute its judgment for that of the agency. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* supra, 419 U.S. at 285, 95 S.Ct. 438. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Nor may reversal be predicated on the sole basis that the record might support a different conclusion. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

█ In the context of "public convenience and necessity" determinations under § 207 of the Interstate Commerce Act, the Commission has been entrusted with a wide range of discretionary authority. *Schaffer Transportation Co. v. United States,* 355 U.S. 83, 88, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957); *United States v. Detroit & Cleveland Navigation Co.,* 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38 (1945); *ICC v. Parker,* 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). The Commission's broad discretion is particularly significant in complex, multiple-applicant cases like the one before us. Under the economic theory with which the Commission works, it must grant authorities only to the extent that the public requires a particular service, guarding against oversupply, which could result in deterioration rather than improvement in service. Where, as here, the Commission is faced with a multitude of applicants, any of which might adequately serve the need or a portion thereof, the decision-making process must be conducted with only the most limited number of reasons for choosing some and not others. That circumstance suggests even greater judicial deference to Commission expertise and discretion in such cases.

**10.** *See* note 2 *supra.*

Having determined that the Commission properly exercised its discretion, and provided in its report a rational basis for denying Shaw part of the authority sought, we sustain the Commission's order on that basis.

## II. TEMPORARY AUTHORITY

The basis for Shaw's challenge of the Commission's refusal to take official notice of its temporary authority (to transport from IBP's facilities to 36 states and the District of Columbia) is that it was an abuse of discretion not to take such notice, when the temporary authority granted nine other carriers was an apparent basis for granting permanent authority to those carriers. The basis for Shaw's challenge of the refusal to reopen the record, for consideration of evidence respecting traffic hauled pursuant to its temporary authority, was that such evidence would have conclusively demonstrated its operational ability to serve the areas for which authority was denied. Neither contention has merit.

 As was made clear in the Commission's report, temporary authority is not a proper basis for the grant of permanent authority:

As opposed to the criteria useful for determining multiple application proceedings elucidated below, the Administrative Law Judge appears to have relied on the grants of temporary authority to reach his conclusions. In those cases where the applications were not coextensive with grants of temporary authority received, the balance of the applied-for destination territory was denied. The criteria required for permanent authority set forth in section 207(a) of the Interstate Commerce Act differ from those established for temporary authority in section 210a(a). Whereas section 207 calls for the issuance of a certificate based upon a showing of present or future public convenience and necessity for the proposed service, section 210a(a) provides only that there be an immediate and urgent need for service to a point or points or within a territory having no carrier service capable of meeting such need. A grant of temporary authority is within the Commission's discretion. This power was deliberately conferred by Congress for the purpose of enabling the Commission to respond rapidly to urgent transportation needs. There is an elenent [sic] of unfairness in permitting applicants who have obtained temporary authority under the informal and expedited procedures applicable thereto to rely upon such "bootstrap" operations conducted in contemplation of a permanent authority application as proof of public need. *All American Transport, Inc.—Purchase— Takin Bros.*, 109 M.C.C. 440, 445 (1970). 126 M.C.C. at 198.

 The reopening of a case is clearly within the sound discretion of the Commission. The clearest showing of an abuse of discretion is required before a refusal to reopen an evidentiary proceeding may be overturned. *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1945); *ICC v. City of Jersey City*, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420 (1943). *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra*, 419 U.S. at 295, 95 S.Ct. 438 (Only "exceptional circumstances" can compel the remand of a case for reopening of evidentiary proceedings.). Shaw has not established an "exceptional circumstance" reflecting a clear abuse of discretion. We therefore do not disturb the Commission's determination to refuse notice of Shaw's temporary authority and to refuse a reopening of the record.

## CONCLUSION

Petitioner having failed to establish that the Commission's partial denial of its application is without an articulated rational basis, or that the Commission's refusal to further consider petitioner's temporary authority was an abuse of discretion, we affirm the order of the Commission.