**WASTE MANAGEMENT, INC., Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

Civ. A. No. 86–3356.

United States District Court, District of Columbia.

Sept. 16, 1987.

Angus MacBeth and Samuel I. Gutter, Sidley & Austin, Washington, D.C., for plaintiff.

Ashley Doherty and F. Henry Habicht II, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Under the terms of the Marine Protection, Research, and Sanctuaries Act, any American citizen or corporation that wishes to dump hazardous material into ocean waters must first obtain a permit from the Environmental Protection Agency. *See* Marine Protection, Research, and Sanctuaries Act ("MPRSA"), 33 U.S.C. § 1401 *et seq.; see also* Convention on the Prevention of Marine Polluting by Dumping of Wastes and Other Matter, August 30, 1975, 26 U.S.T. 2403, T.I.A.S. No. 8165. In 1977, the EPA promulgated regulations for implementing this permitting authority, *see* 40 C.F.R. §§ 220–233 (1986), and it has consistently interpreted these regulations to cover ocean incineration as well as ocean dumping. *Plaintiff's Statement of Material Facts To Which There Should Be No Dispute* ("Plaintiff's Facts"), ¶¶ 3–4. There is no dispute that plaintiff wishes, and is equipped, to obtain ocean incineration permits and conduct ocean burns in future. *Id.* at ¶¶ 5, 10.

The EPA, however, has long recognized the need to promulgate regulations that do not treat ocean incineration as another form of ocean dumping but address the peculiar problems and ramifications of ocean burning in a more specific fashion. *See, e.g.,* 40 C.F.R. § 220.3(f) (ocean dumping regulations apply to ocean incineration "until specific criteria to regulate this type of disposal are promulgated"). In December, 1983, the Assistant Administrator for Water told Congress that the agency would attempt to promulgate ocean incineration regulations within one year. *Oversight Regarding the Incineration of Hazardous Waste at Sea as Part of the Overall Efforts of Congress to Confront the Problem of Managing Hazardous Waste: Hearings Before the Subcommittee on Fisheries and Wildlife Conservation and the Environment and the Subcommittee on Oceanography of the House Committee on Merchant Marine and Fisheries,* 98th Cong., 1st Sess. ("Oversight Hearings") 28 (1983).

On February 28, 1985, the EPA proposed such regulations, 50 *Fed.Reg.* 8222, and accepted public comment upon the proposals through June 28, 1985. As a result of the public's 943 submissions, containing 5000 separate comments, the agency has identified five issues on which it will seek additional public comment sometime this year. *Affidavit of Lawrence Jensen,* Assistant Administrator of Water ("Jensen Affidavit"), ¶ 5. It anticipates that final regulations will be promulgated in 1988. *Id.*

Although defendant has long contemplated these new regulations, until recently plaintiff

it did not have a policy of maintaining the *status quo* with respect to ocean burning of hazardous waste until the new rules are in place. Accordingly, in 1981, plaintiff submitted applications for two ocean incineration permits.[1] *Defendant's Statement of Material Facts As To Which There Should Be No Dispute* ("Defendant's Facts"), ¶ 1. Although lower-level EPA officials viewed these applications favorably, the applications ultimately were rejected after lengthy public hearings and internal EPA consideration. *Id.* at ¶¶ 2–9. Plaintiff did not appeal that rejection. *Id.* at ¶ 18.

One consequence of plaintiff's applications, however, was that EPA reexamined its policy of issuing ocean incineration permits while writing the new ocean incineration regulations. On May 22, 1984, EPA announced that it would defer issuance of operating permits for ocean incineration until specific ocean incineration regulations were promulgated. *Plaintiff's Motion for Summary Judgment, Affidavit of William Y. Brown,* Director of Government Affairs, Waste Management, Inc. ("Brown Affidavit"), Exhibit B (Assistant Administrator's Determination May 22, 1984). On February 25, 1985, EPA published a "Research Strategy" for ocean incineration that contemplated issuance of research permits. 50 *Fed.Reg.* 51, 361. On May 24, 1985, plaintiff applied for a research permit. *Id.* at ¶ 5. That permit was finally denied on May 28, 1986, 51 *Fed.Reg.* 20,344 (June 4, 1986), and at that time EPA announced that it would defer consideration of research permits—the only ocean incineration permits then available—until regulations specifically governing ocean incineration were promulgated. *Id.* at 20, 346. Shortly thereafter, plaintiff filed this suit.

Now before the Court are cross-motions for summary judgment. As there is no dispute over the material facts of this case,

summary judgment is appropriate. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lanningham v. United States Navy,* 813 F.2d 1236, 1241–42 (D.C.Cir.1987). The Court has had the benefit of oral argument on those motions and of extensive briefing by the parties. The Court has also had the benefit of briefs submitted by *amici curiae* Texas, Louisiana, California, and Maryland, as well as oral argument by counsel for *amicus curiae* Texas. After carefully considering the briefs and arguments, the entire record in this case, including the relevant administrative record, and the underlying law, the Court has found that plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment must be granted.

## EPA'S DEFERRAL OF OCEAN INCINERATION PERMITS WAS A RULE OF AGENCY PROCEDURE AND THEREFORE EXEMPT FROM THE NOTICE AND COMMENT REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURE ACT.

Plaintiff's motion argues that, by deferring all applications for ocean incineration permits, defendant has violated its own rules and the Administrative Procedure Act, 5 U.S.C. § 551 et seq. When stripped to their essentials, these contentions amount to a single claim that the agency has effectively and illegally revoked or rewritten the regulations governing ocean incineration by refusing to process permit applications until the forthcoming ocean incineration regulations are in place. Plaintiff's characterization of defendant's actions is incorrect.

■ There can be no question that defendant's action constituted a rule. The Administrative Procedure Act defines a "rule" as

---

1. Current regulations distinguish between two types of ocean incineration permits. "Special permits," also referred to as "operating permits," are effective for three years. 40 C.F.R. § 220.3(b). "Research permits" are available for scientifically valuable ocean burns of a more limited spectrum of waste and expire within eighteen months of issuance. *Id.* at § 220.3(e). One of the permits sought by plaintiff in 1981 was an operating permit, *Plaintiff's Motion for Summary Judgment* at 9 (permit application filed July 10, 1981); the other, filed on November 2, 1981, was a research permit. *Id.*

the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency ... 5 U.S.C. § 551(4). Clearly, an agency statement describing conduct that the agency intends to follow in the future is a statement of "future effect designed to ... prescribe law or policy ... or procedure" and thus a rule. *See, e.g., Thomas v. New York*, 802 F.2d 1443, 1446 (D.C.Cir.1986).

In general, the Administrative Procedure Act requires public notice and comment whenever a rule is promulgated. *Id.* at § 553(b). The absence of notice and a period for public comment is the basis for plaintiff's contention that defendant's alleged revocation of the ocean incineration rules is illegal. If, however, the agency's action falls within the APA's exception for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(A), it is exempt from the notice-and-comment requirement.

 Defendant's deferral of permit applications is obviously not an "interpretive rule," which is a "statement interpreting an existing statute or rule." *Batterton v. Marshall*, 648 F.2d 694 (D.C.Cir.1980). Nor is it a "general statement of policy," which is defined as a statement that merely expresses, "without force of law," the agency's "general intentions for the future." *Pacific Gas and Electric Co. v. Federal Power Commission*, 506 F.2d 33,

38 (D.C.Cir.1974). The final exemption covers agency procedure and practice; defendant argues that its action falls within that exemption and defendant is right.[2]

Whether a rule is "substantive" or "procedural" requires a Court to make " 'legal conclusions which depend upon their settings for definition.' " *Neighborhood Television, Inc. v. Federal Communication Commission*, 742 F.2d 629, 637 (D.C.Cir. 1984), *quoting Brown Express, Inc. v. United States*, 607 F.2d 695, 701 (5th Cir. 1979). To determine which category best fits the rule, a Court "must look at [the rule's] effect on those interests ultimately at stake in the agency proceeding." *Neighborhood Television*, 742 F.2d at 637. If a rule does not "substantially affect," *Pickus v. Board of Parole*, 507 F.2d 1107, 1113 (D.C.Cir.1974), or "jeopardize," *Environmental Defense Fund v. Gorsuch*, 713 F.2d 802, 815 (D.C.Cir.1983), those ultimate interests—if it is not "primarily directed ... toward a determination of the rights or interests of affected parties," *Batterton v. Marshall*, 648 F.2d at 702 n. 34,—the rule is one of procedure, and therefore exempt from the notice-and-comment requirement.

Plaintiff's "ultimate interest" is not acceptance and processing of its applications but an EPA permit to conduct ocean incineration. By deferring acceptance or consideration of the permit applications until new regulations are promulgated, defendant has in no way "substantially affected," "jeopardized," or taken actions "toward a determination" of plaintiff's interest in the permit it seeks. Rather, the agency has

---

**2.** Defendant also challenges plaintiff's standing to bring this suit. Defendant wisely does not challenge plaintiff's claim that it is directly affected by the agency's decision to defer all permit applications until new ocean incineration regulations are promulgated. Rather, defendant argues that plaintiff could have raised the arguments it now makes if it had pursued an administrative appeal when its permit applications were denied; because it never appealed, says defendant, plaintiff cannot seek judicial determination of the legality of the deferral. This argument is unconvincing.

The Court need not address whether plaintiff can be foreclosed from court because it could have, and did not, administratively appeal an issue tangential to the denial of its permit appli-

cation. It is enough for the Court to find that this plaintiff could not have appealed the deferral decision at the time its permit application was denied. Not only was the deferral unrelated to the professed basis for the denial of that application, plaintiff's injury from the deferral is analytically separate and distinct from the injury it experienced by denial of the permit. In an abstract but nonetheless real sense, plaintiff was not injured, *in the context of the appeal of the permit denial*, by the agency's decision to defer accepting new permit applications. The Court also notes that, as it is denying plaintiff's motion for summary judgment, its disposition of this case would not be altered if it found that plaintiff did not have standing to raise this challenge to EPA's actions.

altered its method of operations: it has changed its procedures.

As with any change in procedures, this deferral affects agency supplicants and it may conceivably cause plaintiff some difficulty. But both effect and difficulty are temporary. Plaintiff will be able to submit applications for consideration once the new rules are in place, and nothing in this record suggests that the deferral itself will jeopardize plaintiff's ability to obtain ocean incineration permits in the future.[3]

Although the law concentrates on the effect of the agency's decision on plaintiff's interests, it also requires a Court to examine the *purpose* of agency action to ensure that the agency did not intended to affect interested parties in a "substantive" way. *See, e.g., Batterton v. Marshall,* 648 F.2d at 703. The record before the Court reveals not only that plaintiff was affected in a procedural, rather than substantive, capacity, it fully supports the conclusion that the purpose of the deferral was procedural only.

There is no dispute that the defendant agency has been writing regulations designed to cover ocean incineration. *See Plaintiff's Facts* at ¶¶ 6–9. After an initial inclination to continue granting permits while drafting the new ocean incineration

regulations, the agency decided to impose a temporary freeze on permits until the new regulations were in place. *See id.* at ¶¶ 6–7. Proposed regulations have been published, 50 *Fed.Reg.* 8,222 (Feb. 25, 1985); they have been, and continue to be, the subject of extensive public comment, including comments by plaintiff. *See Jensen Affidavit* at ¶¶ 3, 5. The agency has made clear that these regulations will be revised and promulgated in final form after the agency considers the regulations in light of the public's (including plaintiff's) views. *See id.* at ¶ 6. Thus, the only logical way to view defendant's action is "a temporary suspension [on accepting new ocean incineration permit applications] ... until the outmoded and unsatisfactory old rules could be reexamined" and rewritten after full public participation. *Kessler v. Federal Communications Commission,* 326 F.2d 673 (D.C.Cir.1963).[4]

Thus, neither the effect nor the intent of the agency's action touches upon plaintiff's ultimate interest in obtaining an ocean incineration permit. As a result, the Court must conclude that the agency's deferral of consideration of applications for ocean incineration permits is a procedural rule and not subject to the notice-and-comment provisions of the Administrative Procedures Act.[5] The Court must make one more in-

---

**3.** To be sure, there is no guarantee that plaintiff will be equipped or otherwise able to conduct ocean incineration under the forthcoming regulations. Plaintiff may not, however, bootstrap this uncertainty into an argument that deferral of incineration permits affects plaintiff's "ultimate interests." The record demonstrates beyond cavil that plaintiff was accorded full opportunity to comment on the proposed regulations, *see Jensen Affidavit* at ¶ 3, and plaintiff may take advantage of the period provided for additional comments to advance its views again. Thus, plaintiff has been accorded ample opportunity to safeguard its interests by extensively commenting on the proposed regulatory changes.

**4.** The Court of Appeals for this Circuit has denominated similar temporary freezes "procedural," rather than "substantive." *See id.; see also, Neighborhood Television, Inc. v. Federal Communications Commission,* 742 F.2d 629 (D.C.Cir. 1984); *Ranger v. Federal Communications Commission,* 294 F.2d 240 (D.C.Cir.1961). Plaintiff attempts to distinguish these cases by claiming that they depend on the need for intensive scrutiny of procedures for granting access to the

limited number of broadcast channels. Nothing about the Opinions, however, remotely suggests that the Court was guided by principles of media access. Instead, the Court very clearly concentrated on the lack of substantive effect wrought by the various deferrals or "freezes" of applications for broadcast licenses on the litigants' ultimate interest in obtaining a license. *See Neighborhood Television v. FCC,* 742 F.2d at 637 ("the freeze ... affected this interest only incidentally"); *Kessler v. FCC,* 326 F.2d at 680–81 (freeze effected a temporary suspension that did not substantially affect plaintiff's interest in obtaining a license); *Ranger v. FCC,* 294 F.2d at 244 (change in cut-off dates for submission of applications did not jeopardize interest in obtaining license).

**5.** Plaintiff's motion breaks its argument about the illegality of the deferral decision into two parts. Although the two contentions are but different approaches to the same claim, the Court feels obliged to address the other phrasing of plaintiff's argument. Invoking the venerable principle that an agency is obligated to follow its own rules, plaintiff also claims that

quiry, however, before it may find the disputed rule lawfully made.

## THE DECISION TO DEFER PROCESSING OCEAN INCINERATION PERMITS WAS NOT ARBITRARY, CAPRICIOUS, OR AN ABUSE OF DISCRETION.

The deferral decision is valid only if the defendant agency had a rational basis for deferring acceptance and evaluation of applications for ocean incineration. Citing to Congressional and EPA's own statements about the need for ocean burning of hazardous waste, and implying that the agency's indirection suggests that the deferrals are but the first step toward outright prevention of the ocean incineration, plaintiff argues that the deferral is arbitrary and capricious and therefore violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

The usual standard for evaluating whether agency action is arbitrary and capricious is "highly deferential," *Citizens of Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), and "presumes the validity" of the action. *Motor Vehicle Manufacturers Association v. Ruckelshaus*, 719 F.2d 1159, 1164 (D.C.Cir.1983). As long as the agency has articulated a rational basis for its decision, and that basis is not a *post hoc* rationalization but the genuine underpinning of the agency's action, and the agency has considered the relevant factors when making its decision, the Court must ordinarily uphold the agency's action. *See, e.g., Ace Motor Freight, Inc. v. Interstate Commerce Commission*, 557 F.2d 859 (D.C.Cir. 1977) (post hoc rationalizations irrelevant to court's inquiry); *New England Power Co. v. Goulding*, 486 F.Supp. 18 (D.D.C. 1979).

In the context of an agency acting to maintain the status quo while a rulemaking is pending, the "rational basis" for the

agency's decision is more specifically defined. The agency must have "considered reasonable alternatives to its decided course of action" and must have engaged in "reasoned decision making." *Neighborhood Television Co. v. Federal Communications Commission*, 742 F.2d at 639; *see also MCI Telecommunications Corp. v. Federal Communications Commission*, 750 F.2d 135, 141 (D.C.Cir.1984). Thus, the Court must examine the record with an eye toward the reasonableness of both the basis for the agency's action and the action itself.

■ Defendant's decision to defer granting ocean incineration permits fully measures up to the legal standard. In 1984, EPA decided to develop a research plan that would use monitored and circumscribed forms of ocean incineration to help the agency formulate appropriate and thoughtful ocean incineration regulations. *See Brown Affidavit*, Exhibit B. At the same time, the agency decided against issuing any longer-term "operating permits" for ocean incineration until the new regulations were in place. *See id.* That decision was based on public concerns about the safety of ocean incineration, as well as EPA's determination that long-lived incineration should be deferred until environmental risks were understood and the program's environmental safety assured. *Id.* at Exhibits A and B.

The Court cannot second-guess the Agency's determination that ocean incineration outside the research context potentially carried environmental hazards and therefore should temporarily be curtailed. What the Court can say is that the record shows that the Agency clearly had reason to believe that these hazards existed and its reaction to those hazards was reasonable. *See* 51 *Fed.Reg.* 20,344–46; *see also Oversight Hearings*, at 15–28. Moreover, given the Agency's evident reluctance to

---

defendant's deferral decision amounts to an illegal repudiation of the agency's rules requiring it to process permit applications. There is no question that an agency must abide by its own rules. *See, e.g., Environmental Defense Fund v. Gorsuch*, 713 F.2d 802 (D.C.Cir.1983). But the

agency is empowered to adopt its own rules of procedure, *see, e.g.,* 5 U.S.C. § 551(4), and to change those rules when necessary. *Id.* As the agency has in this case simply changed a rule of procedure, its action fully comports with this aspect of the law.

ban all ocean incineration, and its initial decision to embark upon a program of monitored research burns, the Court must conclude that the agency at first adopted the least restrictive course of action compatible with the agency's concerns.

In February, 1985, the Agency unveiled its research strategy, which contemplated issuance of research permits. After thorough consideration of plaintiff's application for a research permit, the Agency found that deferral was a more appropriate course of action. Thus, the agency decided to "freeze" ocean incineration *only* as a last resort after considering and rejecting more moderate alternatives.

■ That this decision was the product of a "reasoned decision making" is clear. When announcing the deferral decision, the agency identified several issues that required additional consideration before an ocean incineration permit should issue:

> ... establishing financial responsibility requirements and clarifying questions related to liability; addressing concerns related to the risks associated with land and marine transport; delineating factors to consider in the assessment of need; establishing criteria for consideration of an applicant's integrity; establishing requirements of contingency plans; addressing the issue of whether the Agency must prepare an environmental impact statement; addressing the need to finalize the designation of the North Atlantic Incineration Site; addressing the applicability of other federal statutes ... to a research permit; establishing appropriate sampling, analytical and monitoring techniques; and establishing appropriate performance and operational standards.

51 *Fed.Reg.* 20,346 (June 4, 1986). As a result, the agency stated, deferral was

"more appropriate" than individual consideration of each permit application "for resolving [the] complex policy, technical, and legal questions" surrounding ocean incineration permits. *Id.*[6]

Nor was this a thoughtless decision. The agency went on to state that:

> EPA recognizes that it initially proposed that research be conducted prior to the promulgation of ocean incineration regulations. That decision reflected the Agency's response to public concerns about the need to verify information gathered during the past burns regarding the effects of incineration on human health and the marine environment. The Agency, therefore, developed its Research Strategy. While information that would be developed pursuant to the Research Strategy would be useful in the development of ocean incineration regulations, the Agency does not believe such data is a necessary prerequisite to their issuance ...

> The Agency intends to proceed at this time with development of the comprehensive ocean incineration regulations. Through this process, the Agency will carefully address and establish its position on the many issues identified in this decision ... [I]f a research burn is to take place at sea, it will be after the Agency promulgates final ocean incineration regulations so that the public will know precisely how such an activity will be regulated.

*Id.*

Thus, the reason proferred by defendant in Court to support the deferrals was no *post hoc* rationalization but the consistently stated reason for the agency's action. Moreover, it is a reason that makes eminent sense to the Court. An agency in the process of writing new regulations on a

---

**6.** There is, of course, no doubt that the decision to proceed with a rule, rather than case-by-case adjudication, was within the agency's discretion. *See, e.g., NAACP v. Federal Power Commission,* 425 U.S. 662, 667, 96 S.Ct. 1806, 1810, 48 L.Ed.2d 284 (1976); *Securities and Exchange Commission v. Chenery,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *Association of National Advertisers, Inc. v. Federal*

*Trade Commission,* 627 F.2d 1151, 1166 (D.C. Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). Nor can defendant deny the agency's ability to articulate this decision in connection with an adjudicatory proceeding. *See National Labor Relations Board v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974).

topic as sensitive as ocean incineration of hazardous waste cannot be faulted for maintaining the *status quo* until it is satisfied that the incineration can proceed as safely as possible.

The Court finds that defendant's decision to defer ocean incineration applications until new regulations are in place was rationally based, was adopted only after rejecting alternative courses of action, and was the product of reasoned decision making. As such, it was not an arbitrary or capricious decision and it comports with the mandates of the Administrative Procedure Act.

## CONCLUSION

Whether ocean incineration of hazardous waste is wise or wicked policy is not for this Court to decide. Whether policy concerns support ocean burning is similarly not an issue before the Court. The *only* issue for the Court to consider is whether the Environmental Protection Agency acted contrary to law when it decided to defer processing applications for ocean incineration permits until new regulations governing ocean incineration are in place. The Court finds that the Agency has fully complied with all relevant legal requirements. As such, the Court will deny plaintiff's motion for summary judgment, will grant defendant's motion for summary judgment, and will order this case dismissed from the docket of the Court.

The Court feels obliged to note one additional point. In the prayer of its complaint, plaintiff asks the Court to order promulgation of new ocean incineration regulations as a form of relief. Plaintiff does not raise a separate claim that the agency's failure to promulgate these regulations is unlawful. In view of this Opinion, the Court need not consider this question, which was briefed only as a possible remedy for the Court to order if it found for the plaintiff.

The Court will enter an Order, of even date herewith, memorializing these findings.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 15th day of September, 1987,

ORDERED that plaintiff's motion for summary judgment shall be, and hereby is, denied; and it is

FURTHER ORDERED that defendant's motion for summary judgment shall be, and hereby is, granted; and it is

FURTHER ORDERED that this case shall stand dismissed from the docket of this Court.