802 F.2d 1443
 24 ERC 1913, 256 U.S.App.D.C. 49, 55
USLW 2183,
16 Envtl. L. Rep. 20,925
 Lee M. THOMAS, Administrator, United States Environmental
Protection Agency, and Alabama Power Company, et
al., Appellants,
v.
STATE OF NEW YORK, et al (Two Cases).
Lee M. THOMAS, Administrator, United States Environmental
Protection Agency, and National Coal Association, Appellants,
v.
STATE OF NEW YORK, et al.
Lee M. THOMAS, Administrator, United States Environmental
Protection Agency, and Commonwealth of Kentucky, Appellants,
v.
STATE OF NEW YORK, et al.
Lee M. THOMAS, Administrator, United States Environmental
Protection Agency, and State of Ohio, Appellants,
v.
STATE OF NEW YORK, et al.
 Nos. 85-5970, 85-5972, 85-5994, 85-6113 and 85-6114.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 15, 1986.
Decided Sept. 18, 1986.
 
 Appeals from an Order of the United States District Court for the District of Columbia (Civil Action No. 84-853).
 David C. Shilton, Atty., U.S. Dept. of Justice, with whom F. Henry Habicht II, Asst. Atty. Gen., Michael A. McCord, Anne S. Almy, Attys., U.S. Dept. of Justice and Charles S. Carter, Asst. Gen. Counsel, U.S.E.P.A., were on brief for appellant, Lee M. Thomas, Adm'r, U.S.E.P.A., Washington, D.C.
 
 
 1
 Henry V. Nickel, with whom F. William Brownell, Charles H. Knauss and Kerry A. Walsh Skelly, Washington, D.C., were on brief, for appellants Alabama Power Co., et al. and National Coal Ass'n in Nos. 85-5970, 85-5972 and 85-5994.
 
 
 2
 Michael B. Barr, with whom Charles D. Ossola, Washington, D.C., Douglas O. Metz and Dale P. Vitale, Larry G. Kopelman, Columbus, Ohio, were on brief, for appellants Com. of Ky. and State of Ohio and State of West Virginia in Nos. 85-6113 and 85-6114.
 
 
 3
 David R. Wooley, Albany, N.Y. with whom Howard Fox, Washington, D.C., was on brief, for appellees State of N.Y., et al.
 
 
 4
 Bruce J. Terris, with whom James M. Hecker, Washington, D.C., was on brief, for appellees Her Majesty the Queen in Right of Ontario, et al.
 
 
 5
 Gregory W. Sample, Augusta, Me., entered an appearance for appellee State of Maine.
 
 
 6
 Paul H. Schnieder, Clark, N.J., entered an appearance for appellee State of N.J.
 
 
 7
 Robert A. Whitehead and Kenneth N. Tedford, Hartford, Conn., entered appearances for appellee State of Conn.
 
 
 8
 Jocelyn F. Olson, Roseville, Minn., was on brief for amicus curiae State of Minn. urging affirmance.
 
 
 9
 Michael Schaefer, Indianapolis, Ind., was on brief for amicus curiae State of Ind. urging reversal.
 
 
 10
 John A. Thorner and Michael K. Glenn, Washington, D.C., were on brief for amici curiae American Paper Institute, et al., urging reversal.
 
 
 11
 Michael H. Holland and Earl R. Pfeffer, Washington, D.C., were on brief for amicus curiae United Mine Workers of America urging reversal.
 
 
 12
 Before MIKVA and SCALIA, Circuit Judges, and WRIGHT, Senior Circuit Judge.
 
 
 13
 Opinion for the Court filed by Circuit Judge SCALIA.
 
 SCALIA, Circuit Judge:
 
 14
 On January 13, 1981, Douglas M. Costle, at that time Administrator of the Environmental Protection Agency, sent a letter to then Secretary of State Edmund S. Muskie in which he concluded that "acid deposition is endangering public welfare in the U.S. and Canada and ... U.S. and Canadian sources contribute to the problem not only in the country where they are located but also in the neighboring country." This appeal requires us to decide whether, under Sec. 115 of the Clean Air Act, 42 U.S.C. Sec. 7415 (1982), Administrator Costle's letter legally obligated his successors to identify the states in which pollution responsible for acid deposition originates and to order those states to abate the emissions.
 
 
 15
 * Subsection (a) of Sec. 115 of the Clean Air Act, as amended by the Clean Air Act Amendments of 1977, Pub.L. No. 95-95, 91 Stat. 685, 710 (codified at 42 U.S.C. Sec. 7415(a) (1982)) provides:
 
 
 16
 Whenever the [EPA] Administrator, upon receipt of reports, surveys or studies from any duly constituted international agency has reason to believe that any air pollutant or pollutants emitted in the United States cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare in a foreign country ... the Administrator shall give formal notification thereof to the Governor of the State in which such emissions originate.
 
 
 17
 Subsection (b) provides that the "formal notification" issued under subsection (a) shall operate to force each state to revise as much of its state implementation plan (SIP) as is "inadequate to prevent or eliminate the endangerment referred to in subsection (a)." (SIP's impose controls upon individual polluters within each state sufficient to ensure that national ambient air quality standards are met.) Finally, subsection (c) makes subsections (a) and (b) applicable only if the endangered foreign country is one "which the Administrator determines has given the United States essentially the same rights with respect to the prevention and control of air pollution occurring in that country as is given that country by this section."
 
 
 18
 On January 13, 1981, only days before President Reagan took office, outgoing EPA Administrator Costle wrote to then Secretary of State Muskie to express his belief that pollution emitted in the United States was at least partially responsible for acid deposition endangering public welfare in Canada. Acid deposition--often referred to as "acid rain"--is believed to occur when certain pollutants are transported through the atmosphere and chemically altered by atmospheric processes before being deposited in either dry or wet form. Administrator Costle based his "endangerment" finding on a report issued by the International Joint Commission, concededly a "duly constituted international agency" for purpose of Sec. 7415(a). In his letter, Administrator Costle also concluded that newly enacted legislation authorized the Canadian government to provide the United States with essentially the same rights as the United States affords Canada under the Clean Air Act, although he recognized that this "reciprocity" finding "could be changed should the U.S. conclude that future Canadian actions interpreting or implementing their legislation were not giving essentially the same rights to the U.S." Administrator Costle sent a similar letter to Senator George Mitchell of Maine and announced his findings in a press release. No advance notice of Administrator Costle's actions was given, no comments were solicited, and neither the letters nor the findings were published in the Federal Register.
 
 
 19
 Administrator Costle's successors at the EPA did not regard his actions as sufficient to trigger any mandatory action under Sec. 7415. Consequently, several eastern states, national environmental groups, American citizens who own property in eastern Canada, and a Congressman sued the EPA in the United States District Court for the District of Columbia pursuant to the Clean Air Act's "citizen suit" provision, 42 U.S.C. Sec. 7604(a)(2), which provides that "any person may commence a civil action on his own behalf ... against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this [Act] which is not discretionary with the Administrator." The plaintiffs argued that the Costle letters imposed upon the current EPA Administrator a duty to identify the states responsible for acid deposition and to issue SIP revision notices to them.
 
 
 20
 The District Court agreed. New York v. Thomas, 613 F.Supp. 1472, 1481-86 (D.D.C.1985). The court was not troubled by the EPA's argument that identifying which states to notify would be time consuming, costly and perhaps impossible; the Court simply stated that "the obligation to identify the polluting states is incidental to giving formal notification." Id. at 1484 n. *. Likewise, the Court was untroubled that Administrator Costle made his findings in private correspondence, without notice, opportunity for comment, or publication in the Federal Register. The Court remarked that the EPA frequently uses correspondence to take "formal action" under the Clean Air Act, id. at 1484 n. **, and stated that publication of the Costle findings in the Federal Register "would be inappropriate for this kind of action because it is not a rule or policy statement," id. at 1484. The court ordered the EPA to reassess Administrator Costle's "reciprocity" finding and, if it remained accurate, to issue SIP revision notices within 180 days thereafter. On October 22, 1985, the current EPA Administrator found that reciprocity continues to exist between the United States and Canada. The District Court then stayed its order to permit the EPA to bring this appeal. We have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 II
 
 21
 This case involves an unusual statute executed in an unexpected manner. On its face, Sec. 7415 requires an EPA Administrator who has reason to believe in the existence of an international air pollution problem to issue SIP revision notices to "the Governor" of "the State" responsible for it. In the context of a complex, multi-source pollution problem like acid deposition, identification of the problem does not necessarily bring with it identification of the blameworthy states. Had the statute been executed as Congress probably anticipated, the present suit would not have arisen. Notice of the "endangerment" and "reciprocity" findings would have been issued at the same time as the proposed SIP revision notices, comment would have been taken on both, and both would have been published in final form in the Federal Register. Cf. National Asphalt Pavement Ass'n v. Train, 539 F.2d 775, 778 (D.C.Cir.1976) ("National Asphalt ") (finding that particular category of stationary source was "significant contributor" to air pollution issued simultaneously with proposed standards of performance whose issuance was triggered by such finding). Because Administrator Costle chose to issue the "endangerment" and "reciprocity" findings before attempting to identify the culpable states, however, we must determine appellants' claim that the findings legally bind the current Administrator to issue SIP notices. We conclude that, whatever the impact of Administrator Costle's letter, it cannot serve as a basis for judicial relief.
 
 
 22
 Section 551(4) of the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 551(4) (1982), defines "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." Clearly, an agency statement that bound subsequent EPA Administrators to issue SIP revision notices would be a statement of "future effect designed to implement ... law or policy"* and thus a rule. It requires notice-and-comment procedures, therefore, unless it comes within one of the APA's exceptions for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. Sec. 553(b)(A). The statement in the present case is none of these. The findings of "endangerment" and "reciprocity" are not an interpretative rule because they are not a "statement interpreting an existing statute or rule," Batterton v. Marshall, 648 F.2d 694, 705 (D.C.Cir.1980); see also Cabais v. Egger, 690 F.2d 234, 237-38 (D.C.Cir.1982); Guardian Federal Savings & Loan Ass'n v. FSLIC, 589 F.2d 658, 664 (D.C.Cir.1978) ("Guardian Federal "); Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C.Cir.1952). They are not a "general statement of policy" for (on the assumption that they bind subsequent Administrators to action) they do more than express, without the "force of law," the EPA's "tentative intentions for the future." Pacific Gas & Electric Co. v. FPC, 506 F.2d 33, 38 (D.C.Cir.1974). They are not a rule of "agency organization, procedure, or practice" because they "go[ ] beyond formality," Pickus v. Board of Parole, 507 F.2d 1107, 1113 (D.C.Cir.1974), and "jeopardize[ ]" Batterton, 648 F.2d at 708, or "substantially affect," National Ass'n of Home Health Agencies v. Schweiker, 690 F.2d 932, 950 (D.C.Cir.1982),cert. denied, 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983), the rights and interests of private parties. The fact that it is not yet certain which particular states will receive SIP notices as a result of the findings, and which particular dischargers within those states will suffer injury, may be relevant to the question of when legal challenge to the findings would be ripe, but does not convert them into a mere general statement of policy or a procedural rule. We conclude that if Administrator Costle's findings left the EPA no alternative but to issue SIP notices ultimately causing the termination or restriction of the operations of many utilities and manufacturers--if they forced the EPA to take direct and substantial regulatory actions-they could not be promulgated without notice-and-comment procedures.
 
 
 23
 Confirmation of this view is contained in National Asphalt, which held that an EPA Clean Air Act determination similar to the findings involved here was a rule that required notice-and-comment procedures. At issue in that case was the designation of a particular industry for inclusion on the list of stationary sources which "may contribute significantly to air pollution which causes or contributes to the endangerment of public health or welfare." 42 U.S.C. Sec. 1857c-6(b)(1)(A) (1970). Within 120 days after such designation, the Administrator was obligated to publish proposed standards of performance for members of that industry. 42 U.S.C. Sec. 1857c-6(b)(1)(B). We held that notice and comment was required on the designation. National Asphalt, 539 F.2d at 779 n. 2.
 
 
 24
 Appellees urge that a contrary result is demanded by Environmental Defense Fund, Inc. v. Costle, 636 F.2d 1229, 1254-56 (D.C.Cir.1980) ("Costle "), which held that a settlement modification requiring the EPA to take certain investigatory actions was not a rule. Costle, however, like the cases upon which it relied, rests upon "a classification--of investigative acts--that is set apart from either adjudication or rulemaking." Guardian Federal, 589 F.2d at 663. No similar "investigative acts" are at issue in this case.
 
 
 25
 We need not address appellants' remaining arguments to the point that, even if the Costle findings had been published only after notice and comment, they would nevertheless be insufficient to support the present suit. It suffices to say that, because the findings were issued without notice and comment, they cannot be the basis for the judicial relief appellees seek. How and when the agency chooses to proceed to the stage of notification triggered by the findings is within the agency's discretion and not subject to judicial compulsion.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 We reverse and remand to the District Court with instructions to dismiss.
 
 
 29
 So ordered.
 
 
 
 *
 Both appellants and appellees labor under the misconception that the classification of an agency statement as a rule depends upon whether it substantially affects the interests of private parties. While language in past decisions of this court is somewhat misleading on the point, see Environmental Defense Fund, Inc. v. Gorsuch, 713 F.2d 802, 814-15 (D.C.Cir.1983); Environmental Defense Fund, Inc. v. Costle, 636 F.2d 1229, 1254-55 (D.C.Cir.1980), other decisions, see e.g., Batterton v. Marshall, 648 F.2d 694, 704-08 (D.C.Cir.1980); Department of Labor v. Kast Metals Corp., 744 F.2d 1145, 1150 & n. 5 (5th Cir.1984), and the APA itself make clear that the impact of an agency statement upon private parties is relevant only to whether it is the sort of rule that is a rule of procedure, see National Ass'n of Home Health Agencies v. Schweiker, 690 F.2d 932, 949 (D.C.Cir.1982), cert. denied, 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983), or a general statement of policy, see Cabais v. Egger, 690 F.2d 234, 237 (D.C.Cir.1982), and thus does not require notice and comment, not to whether it is a rule at all. Indeed, the APA expressly includes within the definition of rule "an agency statement ... describing the organization ... of an agency"--a statement that can rarely if ever have effect outside of the agency itself. 5 U.S.C. Sec. 551(4)