DOW CHEMICAL, Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 86–4276.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1987.

---

Robert Brager, Charles F. Gauvin, Beveridge & Diamond, Washington, D.C., Samuel P. Jordan, Jr., Dow Chemical Co., U.S.A., R. Dean Cooper, Plaquemine, La., for petitioner.

Lee M. Thomas, Adm'r, E.P.A., Washington, D.C., Stephen L. Samuels, Dept. of Justice, for respondent.

Before WISDOM, HIGGINBOTHAM, and DAVIS, Circuit Judges.

WISDOM, Circuit Judge:

This case is part of a lively dispute about the meaning of a regulation governing industrial discharges of vinyl chloride, a colorless and carcinogenic gas. The petitioner is the Dow Chemical Company (Dow). The respondent is the U.S. Environmental Protection Agency (EPA). Because we conclude that we lack subject matter jurisdiction under the applicable statute, we dismiss the petition.

I.

Dow owns and operates a vinyl chloride plant near Plaquemine, Louisiana. During production, the vinyl chloride is kept in tanks known as "process units". Each process unit has a relief valve that allows vinyl chloride to escape if pressure in the tank rises above a certain level. At the Plaquemine plant, any gas that passes through these relief valves is routed to a continuously burning flare. The flare is said to destroy about 99 percent of all vinyl chloride that reaches it.[1] The remainder is discharged into the atmosphere.

The EPA regulations for vinyl chloride production distinguish between "discharges"[2] and "fugitive emission sources".[3] A discharge occurs when a relief valve opens to allow gas to escape; fugitive emissions are mainly low-level leaks, including "leakage from relief valves".[4] To minimize relief valve leakage, the EPA requires producers to use rupture discs or to take "equivalent" measures that significantly reduce the environmental impact of leaking vinyl chloride.[5]

In January 1978 Dow asked EPA for an equivalency determination that would per-

---

1. The figure that appears most frequently in the record is 99.3 percent.

2. 40 C.F.R. § 61.65(a) (1986).

3. *Id.* § 61.65(b).

4. *Id.* § 61.65(b)(4).

5. *Id.* Rupture discs are thin metal discs that are placed in the tubing that leads from the process unit to the relief valve. Once in place, rupture discs minimize leakage through the relief valve. At a certain fixed pressure, however, a rupture disc will burst and allow the valve to serve its intended purpose.

mit "substitution of the header/flare system for rupture discs" at the Plaquemine plant. On November 21, 1978, EPA ruled that the flare system satisfied the regulation governing relief valve leakage so long as Dow reported to EPA, on a semi-annual basis, unusually high concentrations of vinyl chloride in the flare. The parties agree that Dow has regularly filed these reports.

The EPA deals with "discharges" in a separate regulation, 40 C.F.R. § 61.65(a).[6] Section 61.65(a) is based upon the assumption that relief valve discharges "can be prevented in almost all cases".[7] EPA refers to the standard as a "zero emission limit".[8] No discharges to the atmosphere are permitted. If discharges do occur they must be reported to the EPA within ten days, and the producer must explain both why the discharge took place and what it has done to prevent similar discharges in the future. Dow has apparently never reported a discharge at the Plaquemine plant under this regulation.

On December 2, 1985, an EPA Regional Administrator, Dick Whittington, wrote to Dow requesting information "to determine whether [the Plaquemine plant is] complying with applicable air pollution requirements". More specifically, Whittington announced that the agency's inquiry would "focus on whether Dow has reported all discharges of vinyl chloride from relief valves in vinyl chloride service to the flare header in accordance with applicable reporting requirements ...". Whittington asked for data pertaining to every relief valve discharge that had occurred at the plant since December 1980—regardless of whether the data had already been supplied to EPA in the semi-annual reports that Dow was filing in accordance with the rupture disc equivalency determination.

Whittington attached two enclosures to his letter.[9] The second enclosure (Enclosure II) purported to clarify "an apparent misunderstanding by Dow" about the scope and effect of the rupture disc equivalency determination.[10] After acknowledging the acceptability of the flare for dealing with the problem of leakage, Enclosure II concludes by noting that:

> discharges into the collection header/flare system ... are not covered by the equipment equivalency ... and should, therefore, be reported within ten days under the applicable requirements of 40 CFR § 61.65(a). Dow's use of a flare to significantly reduce the quantity of vinyl chloride that is released to the atmosphere during relief valve discharge incidents is commendable protection of the environment, but has not been demonstrated to meet compliance with 40 CFR § 61.65(a).

This statement lies at the heart of the petition before us today.

Dow responded to the Whittington letter by providing EPA with the requested information. At the same time, however, Dow filed suit in the Middle District of Louisiana to enjoin EPA from applying the requirements of § 61.65(a) to valve dis-

---

6. 40 C.F.R. § 61.65(a) provides that:
Except for an emergency relief discharge, there is to be no discharge to the atmosphere from any relief valve on any equipment in vinyl chloride service. An emergency relief discharge means a discharge which could not have been avoided by taking measures to prevent the discharge. Within 10 days of any relief valve discharge, the owner or operator of the source from which the relief valve discharge occurs shall submit to the Administrator a report in writing containing information on the source, nature and cause of the discharge, the date and time of the discharge, the approximate total vinyl chloride loss during the discharge, the method used for determining the vinyl chloride loss, the action that was taken to prevent the discharge, and measures adopted to prevent future discharges.

7. 40 Fed.Reg. 59,535 (Dec. 24, 1975).

8. *Id.* at 59,539.

9. The first enclosure described the exact information that EPA wanted. It is not relevant here.

10. According to the EPA, Enclosure II was drafted ... to respond to Dow's assertion in an October 8, 1985 letter to the Louisiana Department of Justice that Dow interpreted the semi-annual reporting requirements in the equipment equivalency to replace the ten-day reporting requirement for relief valve discharges in section 61.65(a).
Brief for Respondent at 15.

charges at the Plaquemine plant.[11] Because the discharges are routed to the flare, Dow argued, they cannot rationally be governed by a regulation that deals with discharges "to the atmosphere".

The district court determined that it lacked subject matter jurisdiction over the dispute. This ruling rested upon two grounds. The court found that Dow's complaint failed to raise a federal question.[12] It also held that neither the Whittington letter nor Enclosure II constituted "final agency action".[13] We eventually affirmed this decision on other grounds.[14]

Four days after the district court dismissed the complaint, Dow filed—in this Court—the petition that is presently under review. Again Dow presents the argument that discharges to the flare are not governed by § 61.65(a). Dow also contends that Enclosure II represents "rulemaking" that does not comply with the procedural requirements of section 307(d) of the Clean Air Act.[15] Both parties have submitted extensive briefs on the jurisdictional issues and on the merits.

Finally, on August 25, 1986, four months after Dow had filed the petition now under review, the EPA amended its complaint in an ongoing enforcement action against Dow to include allegations that Dow failed to report eleven relief valve discharges at the Plaquemine plant in violation of § 61.-65(a).[16] After a partial settlement, these allegations are now the only area of dispute remaining in the enforcement action before the district court. The court stayed discovery and other proceedings in that case, however, pending this Court's disposition of Dow's second attempt to obtain judicial review of the Whittington letter and Enclosure II.

## II.

Congress has granted the circuit courts exclusive original jurisdiction to review EPA action taken under several specific sections of the Clean Air Act.[17] The same jurisdictional provision also gives us similar authority to review "any other *final action* of the Administrator under this chapter ... which is locally or regionally applicable ..." (emphasis added).[18] The question we now face is whether the Whittington letter and the other actions associated with it constitute "final action" subject to direct review by this Court.[19]

### A.

■ The EPA contends that Dow should be bound by the adverse judgment in its first effort to challenge the Whittington letter in federal court. EPA reminds that "a court has jurisdiction to determine its jurisdiction; and once it has made that determination its decision is binding unless reversed on appeal".[20] But as EPA implicitly concedes, Dow is not barred from filing

11. Dow filed its first suit on December 20, 1985. At that time an EPA enforcement action, Civil Action No. 85–294–A, was already pending against Dow before a different judge in the Middle District of Louisiana. As we shall see, the EPA later amended its complaint in this enforcement action in a way that implicates the relief valve discharges and the regulatory interpretation at issue here.

12. *Dow Chemical Co. v. E.P.A.*, 635 F.Supp. 126, 130 (M.D.La.1986).

13. *Id.* at 131.

14. *Dow Chemical Co. v. E.P.A.*, No. 86–3376, slip op. at 1 (5th Cir. Oct. 28, 1986).

15. 42 U.S.C. § 7607(d) (1983).

16. See note 11.

17. 42 U.S.C. § 7607(b)(1).

18. *Id.*

19. Dow relies primarily upon the Whittington letter and Enclosure II, rather than the EPA's enforcement suit, as the "final" agency actions to be reviewed by this Court. Dow's petition in this case *preceded* the EPA's amendment of its pending enforcement suit to include alleged violations of 40 C.F.R. § 61.65(a). Indeed, Dow attempted to use the pendency of this case to prevent EPA from amending its complaint in Civil Action No. 85–294–A. Both parties, however, have discussed the enforcement suit in their briefs, and our finality analysis applies both to the Whittington letter and to the EPA's later decision to amend its complaint in the enforcement action.

20. *Lambert v. Conrad,* 536 F.2d 1183, 1185 (7th Cir.1976).

its petition in *this* court by the district court's conclusion that *it* lacked subject matter jurisdiction.[21] Instead, EPA argues that Dow should be estopped from contending that the Whittington letter constitutes a "final action" because this was "precisely the issue determined by the Middle District of Louisiana in an action brought by Dow itself".[22]

██ Dow maintains that it cannot be bound by the district court's decision because this Court affirmed on other grounds.[23] We agree. "The federal decisions agree that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision."[24] We decline to depart from this accepted rule.[25]

## B.

Having rejected EPA's res judicata argument, we must now decide whether Dow

has identified "final" EPA action over which we have jurisdiction. As we observed in *Geyen v. Marsh*, "[a] final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship".[26] The EPA action at issue in this case does none of these things.

To be sure, the trial judge in Civil Action No. 85–294–A may ultimately order Dow to report all discharges into the flare within ten days. In effect, this is what the Whittington letter predicts will happen.[27] Dow may also be penalized for not having properly reported its vinyl chloride discharges in the past. But the legal source for these orders—if indeed the district court concludes that they are warranted—will be 40 C.F.R. § 61.65(a), and not any later EPA interpretation of that regulation.

EPA's construction of 40 C.F.R. § 61.-65(a) is "final" only in the sense that no one at the agency currently plans to revise

---

**21.** *See, e.g.,* 1B J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 0.405[5] (2d ed. 1984) ("... ordinarily a judgment dismissing an action or otherwise denying relief for want of jurisdiction ... does not preclude a subsequent action in a court of competent jurisdiction on the merits of the cause of action originally involved").

**22.** Brief for Respondent at 21.

**23.** Our opinion affirming the district court reads as follows:

IT IS ORDERED that the judgment of the district court be affirmed for the reason that the court lacked subject matter jurisdiction. 42 U.S.C. § 7607(b)(1). *See Harrison v. PPG Industries,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980).

The reference to 42 U.S.C. § 7607(b)(1)—a provision that vests original jurisdiction to review certain EPA actions under the Clean Air Act in the circuit courts—cannot fairly be read as an affirmance of either rationale employed by the district court. Similarly, as EPA points out in another context, the finality of the agency's action was not at issue in *Harrison.* Respondent's Memorandum in Support of Motion to Dismiss at 18.

**24.** 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4421 (1981). *Cf. Breen v. Centex Corp.,* 695 F.2d 907, 915–16 (5th Cir.1983); *see also* Restatement (Second) of Judgments § 27 comment *o* (1981).

**25.** We reach this result in the interest of uniformity even though the rationale for the rule is arguably inapplicable to the present case. The

rule responds to the fear that an appellate court's choice of grounds may arbitrarily and unfairly preclude any review of alternative grounds reached by the district court. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4421 (1981). Here, after appealing the district court's judgment on the issue of finality, Dow sought to *prevent* review of the issue by filing a motion with this Court "for an order remanding this action to the district court with instructions to dismiss the case for lack of subject matter jurisdiction pursuant to *Harrison v. PPG Industries*".

**26.** 775 F.2d 1303, 1308 n. 6 (5th Cir.1985); *see also Dep't of Justice v. Federal Labor Relations Authority,* 727 F.2d 481, 493 (5th Cir.1984); *Air California v. U.S. Dep't of Transportation,* 654 F.2d 616, 621 (9th Cir.1981). *Cf. FTC v. Standard Oil Co. of California,* 449 U.S. 232, 240 n. 8, 101 S.Ct. 488, 493 n. 8, 66 L.Ed.2d 416 (1980); *Abbott Laboratories v. Gardiner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967) (FDA regulations that "have the status of law" held to constitute final agency action).

**27.** Enclosure II states that "Dow's use of a flare ... has not been demonstrated to meet compliance with 40 C.F.R. § 61.65(a)". This statement contains an implicit rejection of Dow's argument that discharges to the atmosphere by the flare are not discharges to the atmosphere. Enclosure II, however, represents nothing more than the EPA's educated guess as to the precise nature of Dow's *pre-existing* legal duties.

it.[28] The same could be said of countless other instances of legal "interpretation" that inevitably occur whenever the EPA requests information, opens a new file, schedules a plant inspection, and the like. When these interpretations do not establish new rights or duties—when they do not fix a legal relationship—they do not constitute "final action" by the agency and they are not reviewable in this Court under 42 U.S.C. § 7607(b).

■ In this case, EPA expressed a view on the scope of 40 C.F.R. § 61.65(a) while requesting certain data. Under section 114 of the Clean Air Act, which Dow does not challenge, EPA could arguably have requested the discharge data without providing any explanation for its interest.[29] The threat of protracted litigation should EPA choose to reveal its reasons for seeking information would adversely affect pre-enforcement communication between EPA and industry.[30] Dow has offered no objection to the request for information itself. We rule that the construction of 40 C.F.R. § 61.65(a) which accompanied that request was not a "final action".

The cases relied upon by Dow are not to the contrary. In *City of Seabrook v. Costle*,[31] this Court affirmed a denial of jurisdiction under section 304(a)(2) of the Clean Air Act because we found that the EPA's conditional approval of a Texas "state implementation plan" *was* final agency action.[32] As we explained in a companion case involving the same parties, the conditional approval at issue in *City of Seabrook* was published in the Federal Register as part of a "final rule" announced after nearly eight months of notice and comment.[33] "Conditional approval" gave Texas the unilateral power to make changes that would

---

**28.** It is important not to confuse "finality" with the related doctrine of "exhaustion". The exhaustion requirement for judicial review is satisfied when no avenues of intra-agency relief remain open to the petitioner. Finality, by contrast, goes to the question whether the agency action has conclusively established or altered administrative norms that govern the petitioner. *See generally* R. Pierce, S. Shapiro & P. Verkuil, *Administrative Law and Process* 182–196 (1985). In *Geyen* we held that the plaintiff had established "finality" but not "exhaustion". 775 F.2d at 1308 n. 6. In this case, conversely, the fact that Dow may have "exhausted" its right to agency review of the Whittington letter need not imply that the letter is a "final agency action". Cf. *FTC v. Standard Oil Co. of California*, 449 U.S. at 243, 101 S.Ct. at 495.

**29.** 42 U.S.C. § 7414(a) (1983) (in the course of enforcing standards established under the Clean Air Act, the Administrator of EPA is authorized to view company records and inspect equipment "upon presentation of his credentials"). This approach might have foreclosed even the possibility of an informal resolution of the dispute, since Dow might genuinely not have understood why EPA wanted the data.

**30.** The "policy" reasons for declining jurisdiction in this case are significant. In addition to the impact on pre-enforcement communication between EPA and industry, "judicial interference ... would circumvent the enforcement scheme delineated in 42 U.S.C. § 7413 which gives EPA different enforcement options". *Dow Chemical Co. v. EPA*, 635 F.Supp. 131. As the Supreme Court noted in connection with a challenge to the FTC's decision to proceed against eight major oil companies for alleged violations of 15 U.S.C. § 45, "[j]udicial review ... should not be a means of turning prosecutor into defendant". *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 243, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980). Moreover, it would be both awkward and wasteful for this Court to render an interpretation of 40 C.F.R. 61.65(a) while leaving factual and other legal issues to be decided by the district court; we have often expressed our distaste for such "piecemeal review". *City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir.1981).

While "policy" considerations permeate the judicially-developed doctrine of "ripeness", see *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681, they are not, strictly speaking, an element of the legislatively-imposed requirement of *finality* that is at issue in the present case. We do not reach the issue of ripeness. Because finality is only one of the four ripeness factors outlined in *Abbott Laboratories*, an agency action may be final without being ripe. *Texas v. Department of Energy*, 764 F.2d 278, 283 (5th Cir.), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 531, 88 L.Ed.2d 463 (1985).

**31.** 659 F.2d 1371.

**32.** 42 U.S.C. § 7604(a)(2). This provision establishes jurisdiction in the district courts for "citizen suits" alleging that the EPA has failed to perform an "act or duty ... which is non-discretionary". Under § 304(a)(2), then, agency action *precludes* jurisdiction.

**33.** *City of Seabrook v. EPA*, 659 F.2d 1349, 1353 (5th Cir.1981), *cert. denied*, 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982).

lead to automatic final approval of their state implementation plan.[34] Thus the agency action in *City of Seabrook* fixed a legal relationship. As we have seen, the Whittington letter did not.[35]

■ Whether amendment of the enforcement suit against Dow was "final action" presents a closer question. A lawsuit inevitably imposes obligations and "fixes a legal relationship".[36] We conclude, however, that the allegations made in an enforcement suit do not impose the *kind* of legal obligations with which finality doctrine is concerned. In reaching this conclusion we are guided by the Supreme Court's decision in *FTC v. Standard Oil of California ("Socal")*.[37]

The agency action at issue in *Socal* was the filing of an administrative complaint within the FTC. The Court recognized that "the issuance of the complaint is definitive on the question whether the Commission avers reason to believe that the respondent ... is violating the Act".[38] This was not final action subject to judicial review, however, because "... the issuance of the complaint averring reason to believe has no

legal force comparable to that of the regulation at issue in Abbott Laboratories".[39] Although the Court conceded that the FTC complaint itself imposed "substantial" burdens upon Socal, it held that obligations inherent to litigation are "different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action".[40] The *Socal* Court's analysis applies directly to the present case: amendment of the enforcement action against Dow was not "final action".[41]

### C.

Because neither the Whittington letter nor the EPA's amendment of its complaint constitutes "final action" as required by 42 U.S.C. § 7607(b)(1), we are without jurisdiction to rule upon Dow's petition. This, of course, does not mean that Dow will be "forever denied its right to challenge EPA's unlawful interpretation of § 61.-65(a)".[42] EPA concedes that Dow will be allowed to raise its interpretation of § 61.-65(a) as a defense in the pending enforcement suit; we regard this concession as

---

**34.** *Id.*

**35.** The D.C. Circuit's decision in *Ciba–Geigy v. EPA*, also relied upon by Dow, is similarly distinguishable. In *Ciba–Geigy*, the EPA developed a "revised labeling statement" and mailed it to 17 producers of the pesticide simazine. 801 F.2d 430, 432 (D.C.Cir.1986). By its terms, this statement created a new rule that went into effect on January 30, 1985. *Id.* Labels which had been permissible before the EPA acted were suddenly subject to civil and criminal sanctions. This change—along with a letter that emphatically required Ciba–Geigy to comply with the new rule—was held to satisfy the "finality" component of the Supreme Court's test for ripeness as articulated in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). We see no merit whatsoever in Dow's attempt to characterize the agency action in *Ciba–Geigy* as a "suggest[ion]" or a "request". Petitioner's Opposition to the Motion to Dismiss at 13 n. 9.

**36.** *Cf. Geyen v. Marsh*, 775 F.2d at 1305 n. 6.

**37.** 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

**38.** *Id.* at 241, 101 S.Ct. at 493–94.

**39.** *Id.* at 242, 101 S.Ct. at 494.

**40.** *Id.*

**41.** We are mindful of the fact that *Socal* involved enforcement proceedings *within* the FTC. *See* Petitioner's Opposition to the Motion to Dismiss at 17. We find this distinction unpersuasive, however, for two reasons. First, at least formally, the plaintiffs in *Socal* were *not* challenging the ultimate merits raised by the FTC's complaint. If they had been, of course, it might well have mattered that the case was before an agency, and not in federal court. R. Pierce, S. Shapiro & P. Verkuil, *Administrative Law and Process* 206–08 (1985) (discussing the doctrine of primary jurisdiction). Instead, Socal merely sought to review the decision to issue the complaint—a decision that the FTC had expressly declined to reconsider. 449 U.S. at 237, 101 S.Ct. at 492. We find nothing in Justice Powell's opinion to suggest that the reviewability of this decision should turn on *where* the complaint was filed. Second, there is some indication in *Socal* that the plaintiff's action would have been dismissed even if the enforcement case had been pending in federal court on appeal. *See Id.* at 241, 101 S.Ct. at 494.

**42.** Petitioner's Opposition to the Motion to Dismiss at 18.

fully consistent with the language of 42 U.S.C. § 7607(b)(2).[43]

The Petition for Review is hereby DISMISSED.

43.  42 U.S.C. § 7607(b)(2) provides that:

Action of the Administrator *with respect to which review could have been obtained under paragraph (1)* shall not be subject to judicial review in civil or criminal proceedings for enforcement.

(emphasis added). Our holding today is that judicial review is *not* available to Dow under paragraph (1) of 42 U.S.C. § 7607(b).