879 F.2d 1379
 30 ERC 1265, 19 Envtl. L. Rep. 21,383
 The GREATER CINCINNATI CHAMBER OF COMMERCE; Dupont Corp.;
General Electric Co.; Quantum Chemical Corp.;
The Cincinnati Gas & Electric Co.; The
Procter & Gamble Co., Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
 No. 89-3158.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 26, 1989.
Decided July 17, 1989.
 
 Robert L. Brubaker (argued), Porter, Wright, Morris & Arthur, Columbus, Ohio, for the Greater Cincinnati Chamber of Commerce.
 Ross Austin, DuPont Corp. Legal Dept., Wilmington, Del., for Dupont Corp.
 Peter Van Allen, Gen. Elec. Co., Cincinnati, Ohio, for Gen. Elec. Co.
 David Copeland, Quantum Chemical Corp., Cincinnati, Ohio, for Quantum Chemical Corp.
 Jerome A. Vennemann, Cincinnati Gas & Elec. Co., Cincinnati, Ohio, for the Cincinnati Gas & Elec. Co.
 David E. Ross, Procter & Gamble Co. Legal Division, Cincinnati, Ohio, for the Procter & Gamble Co.
 Lee M. Thomas, Adm'r U.S. E.P.A. Office of the Gen. Counsel, Craig B. Shaffer (argued), U.S. Dept. of Justice, Land & Nat. Resources Div., Patricia A. Embrey, U.S. E.P.A. Office of Gen. Counsel, Washington, D.C., Monica Smith, Office of Regional Counsel, U.S. E.P.A., Region 5, Valdas V. Adamkus, Adm'r E.P.A., U.S. E.P.A., Region 5, Chicago, Ill., Richard Thornburgh, Office of the U.S. Atty. Gen., Washington, D.C., for U.S. E.P.A.
 James O. Payne (argued), Asst. Atty. Gen., Environmental Enforcement Section, Columbus, Ohio, for State of Ohio.
 ORDER
 Before NELSON and BOGGS, Circuit Judges, and ALDRICH, District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 The petitioners, the Greater Cincinnati Chamber of Commerce, Dupont Corp., Quantum Chemical Corp., Cincinnati Gas and Electric Co., and Procter & Gamble Co. (petitioners) seek review of the United States Environmental Protection Agency's (EPA) action finding the Ohio State Implementation Plan (SIP) "substantially inadequate to achieve the National Ambient Air Quality Standards for sulfur dioxide in Hamilton County," and calling for the State to "cure the inadequacies in the SIP by revising it." On December 22, 1988, the EPA ordered the State of Ohio (the State) to submit a schedule for the development of the SIP within 60 days, and to submit a final SIP within 18 months. The petitioners now move to stay the implementation of the EPA's order pending appeal. The EPA opposes this motion, and moves to dismiss the appeal for lack of jurisdiction. In addition, the State filed a motion to intervene in this appeal on April 28, 1989, after the thirty-day time limit for filing such motions had expired.
 
 
 2
 We grant the EPA's motion to dismiss, finding that this case is not yet ripe for review by this court. Thus, we need not decide the petitioner's motion to stay or the State's motion to intervene.
 
 
 3
 * Pursuant to section 110 of the Clean Air Act (the Act), 42 U.S.C. Sec. 7410, the EPA has the authority to find that a SIP or portion of a SIP is substantially inadequate to achieve the National Ambient Air Quality Standards (NAAQS) for certain substances, including sulfur dioxide, that have been found to have deleterious environmental effects. The EPA informed the State by letter that it had determined a need to exercise this authority, and an informational notice of the EPA's finding of deficiency and call for SIP revision was published in the Federal Register on February 9, 1989. 54 Fed.Reg. 6287 (1989). On February 17, 1989, the petitioners filed a petition for review of the EPA's action under section 307(b)(1) of the Act, 42 U.S.C. Sec. 7607(b)(1), which permits judicial review of final agency actions, alleging that the EPA's action was both procedurally and substantively defective.
 
 
 4
 The Act authorizes the EPA to determine which air pollutants endanger the public, what concentrations of those pollutants are safe, and to promulgate its determinations as NAAQS. 42 U.S.C. Secs. 7408-10. Within nine months after the promulgation of a standard, States are obligated to draft SIPs to achieve and maintain compliance with EPA standards. Ibid. States must submit their SIPs to the EPA for approval under eleven criteria set forth in section 110(a)(2). 42 U.S.C. Sec. 7410(a)(2). Proposed SIP revisions also must be submitted to the EPA for approval. 42 U.S.C. Sec. 7410(a)(3). All SIPs must provide for revision whenever the EPA finds that the plan is "substantially inadequate to achieve the national ambient air quality primary or secondary standard which it implements...." 42 U.S.C. Sec. 7410(a)(2)(H). However, such a finding of inadequacy does not transform the attainment area into a non-attainment area, which would require the State to meet more stringent standards for that area, including the possibility of mandated emission reductions or construction bans. Bethlehem Steel Corp. v. EPA, 723 F.2d 1303 (7th Cir.1983); 42 U.S.C. Secs. 7502, 7503.
 
 
 5
 Once the EPA finds that a SIP is "substantially inadequate," and notifies the State of this finding and of the need for SIP revision, an extensive regulatory process is triggered. 40 C.F.R. Sec. 51.104. Following notification, the State is given 60 days in which to submit a schedule for the SIP revision. 40 C.F.R. Sec. 51.104(b). Normally, the EPA will permit the State one year to submit the revised SIP, which the EPA then evaluates. The State may, after public hearing, determine that the existing SIP is adequate and submit evidence of this adequacy to the EPA. This course of action, if the State's position is rejected, may ultimately result in a proposed federal plan for the area which would be made final after notice and comment rulemaking. 42 U.S.C. Sec. 7410(c)(1)(C). On the other hand, if the State finds that its SIP is inadequate and adopts a revision, the EPA then proposes its decision on the revision by publication in the Federal Register, after which the EPA will take public comment before making a final decision. At this point, the regulatory process is complete, and judicial review becomes available under the Act. 42 U.S.C. Sec. 7607(b)(1).
 
 
 6
 In the instant case, the EPA has found deficiencies in the SIP for Hamilton County, Ohio regarding sulfur dioxide emissions. Hamilton County is located in an attainment area for sulfur dioxide. 40 C.F.R. Sec. 81.336. The state's SIP was approved for Hamilton County in 1981 and 1982. 46 Fed.Reg. 8481 (1981); 47 Fed.Reg. 16784 (1982). However, the EPA has expressed increasing concern over the adequacy of the SIP to meet the NAAQS for sulfur dioxide emission in Hamilton County. As early as 1983, in its audit report to Ohio's EPA, the federal EPA notified State authorities of projected violations of the sulfur dioxide NAAQS. In a letter dated September 29, 1986, the EPA again notified the State of these predicted violations and offered the State an opportunity to comment on the EPA's data prior to issuance of a notice of SIP deficiency.
 
 
 7
 In the course of a modeling analysis performed by American Electric Power to support a new source application for its Zimmer plant, predicted violations of the sulfur dioxide NAAQS in Hamilton County were discovered. On November 6, 1986, and on May 7 and July 15, 1987, the EPA notified the State of these predicted sulfur dioxide violations in Hamilton County. Subsequently, on December 28, 1987, the EPA informed the State of NAAQS violations predicted by a dispersion modeling analysis employed by the Indiana Department of Environmental Management to support development of a revised SIP for Dearborn County, Indiana, which adjoins Hamilton County, Ohio. That modeling encompassed sources across the Indiana border in Hamilton County. That analysis found that sources in Hamilton County contributed substantially to predicted sulfur dioxide violations in Dearborn County. Indiana authorities notified Ohio of these findings in letters dated November 2, 1987 and December 30, 1987.
 
 
 8
 In addition to notifying the State of these predicted violations, for several years, the EPA conditioned Ohio's grant awards of federal funding for use in improving environmental conditions on the State's commitment to deal with the deficiencies in the Hamilton County SIP. Finally, on July 19, 1988, an EPA representative met with the current petitioners to discuss the likelihood of a call for a SIP revision based on the State's inaction. Petitioners asked the EPA to delay its notice of deficiency for 27 months while petitioners conducted their own modeling analysis of the sulfur dioxide situation in Hamilton County. The EPA responded that it could no longer justify delay because the State had been aware of the problem for some time and had failed to act. However, the EPA expressed its willingness to allow the State 18 months instead of the usual 12 months to prepare its response to the EPA notice of deficiency, and agreed to review the results of the petitioners' modeling in evaluating the State's response to the notice and call for SIP revision.
 
 
 9
 Thus, on December 22, 1988, the EPA informed the Governor of Ohio that the EPA had determined that the State's SIP was "substantially inadequate" to achieve the NAAQS for sulfur dioxide in Hamilton County. A notice was published in the Federal Register, which explained that the notice was "informational only and [had] no regulatory effect." 54 Fed.Reg. 6288 (1989). On February 22, 1989, the State submitted a development schedule for revising its SIP within 18 months, and an alternative schedule for revision in 27 months. The State asked the EPA to allow the longer time, while assuring the EPA that it would comply with the 18 month schedule if required to do so.
 
 
 10
 On February 17, 1989, the petitioners filed the instant petition for review. Subsequently, they moved to stay the EPA order pending appeal, and the State moved to intervene. Finally, and most significantly, the EPA moved to dismiss the petition on the grounds that there had been no final agency action, and thus the case was not ripe for judicial review. For the following reasons, we agree.
 
 II
 
 11
 Section 307(b)(1) of the Act states, in pertinent part, that "[a] petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title ... or any other final action of the Administrator ... may be filed...." 42 U.S.C. Sec. 7607(b)(1) (emphasis added). The highlighted language demonstrates Congress's intent to limit the notion of a final decision under section 7410 to approvals or promulgations of SIPs. Thus, the statutory language itself would seem to define the scope of judicial review, and the meaning of a final action regarding SIPs, to exclude actions that fall short of approvals or promulgations of SIPs.
 
 
 12
 In addition, the Supreme Court has considered the meaning of the term "any other final action" as used in section 307(b)(1) to apply "only to other items akin to those specifically enumerated." Harrison v. PPG Industries, Inc., 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980). This supports our reading of the statute as allowing judicial review only of agency actions that are " 'definitive' statements of the [agency's] position ... [and have] a 'direct and immediate ... effect on the day-to-day business' of the complaining parties." Federal Trade Comm'n v. Standard Oil Co. of California, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 151-52, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967)). Thus, even without the strong support for this position expressed in the relevant precedents, we would feel confident in reaching the conclusion that the statutory language defines the scope of review to exclude the instant petition. Only the approval or promulgation of a revised SIP for Hamilton County will have the effect on the petitioners that is required to constitute final agency action.
 
 
 13
 The other courts which have addressed the same or similar issues are in agreement with our reading of the statute. For example, in Dow Chemical v. United States Environmental Protection Agency, 832 F.2d 319, 323 (5th Cir.1987), the Fifth Circuit stated that a " 'final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship.' " (quoting Geyen v. Marsh, 775 F.2d 1303, 1308 n. 6 (5th Cir.1985)). Thus, the court found that an interpretation of an agency regulation coupled with a request for data, and the amendment of a complaint in an enforcement action, were not final actions subject to judicial review. Id. 832 F.2d at 323-24. On the other hand, in Bethlehem Steel Corp. v. United States Environmental Protection Agency, 723 F.2d 1303, 1306 (7th Cir.1983), the Seventh Circuit held that reclassification of an area as a nonattainment area "trigger[ed] definite and grave consequences," and so amounted to a final action subject to judicial review. The distinction between the two cases is clear. In Dow Chemical, the EPA had not taken action which in any sense changed the status quo; it merely undertook to assess whether there was a need for such a change. 832 F.2d at 323-24. On the other hand, the reclassification in Bethlehem Steel did change the status quo by effectively imposing more stringent compliance standards on those operating businesses in the affected area.
 
 
 14
 In a case quite similar to the one before us, the Seventh Circuit held that a notice of deficiency of a SIP was not a final order because it was "an act of limited consequence preliminary to other events anticipated by the [Clean Air] Act." People of the State of Illinois v. United States Environmental Protection Agency, 621 F.2d 259, 261 (7th Cir.1980). The court there explained that a notice of deficiency--precisely that which has been issued, and is being challenged, in the instant case--is "only one step in an extended administrative process." Ibid. As such, it was of "no consequence." Id. at 262.
 
 
 15
 Similar cases that have been decided by this court are consistent with our position here. In Buckeye Power, Inc. v. Environmental Protection Agency, 525 F.2d 80, 81 (6th Cir.1975), this court held that, when the EPA had only conditionally approved a SIP, and when the changes in the SIP required by the conditions imposed on the State were in the process of being made, there had been no final decision, and the case was not ripe for judicial review. In Big Rivers Electric Corp. v. Environmental Protection Agency, 523 F.2d 16, 18 (6th Cir.1975), this court held that disapproval of a portion of a SIP is a final decision when the decision is treated by the parties as a final approval with the disapproved portion eliminated. This merely tracks the explicit language of the statute in that it involved "approving or promulgating" a SIP. Thus, we find support for our interpretation of the finality requirement in the prior decisions of this court as well as those of other courts.
 
 
 16
 Petitioners place much reliance on Judge (now Justice) Scalia's decision in Thomas v. State of New York, 802 F.2d 1443 (D.C.Cir.1986). In that case, a former Administrator of the EPA sent a letter to the Secretary of State concluding that acid rain was being caused by both American and Canadian sources. Id. at 1445. No advance notice or opportunity for public comment was afforded prior to reaching this conclusion. Ibid. A number of environmental groups and concerned individuals sued the EPA, claiming that the Administrator's conclusion required his successors at the agency to identify the states that contributed to the production of acid rain, and to issue SIP revision notices to them. Id. at 1445-46. Judge Scalia held that the Administrator's letter could not form the basis for judicial intervention because the letter contained only an "express[ion], without the 'force of law,' [of] the EPA's 'tentative intentions for the future.' " Id. at 1447 (quoting Pacific Gas & Electric Co. v. Federal Power Commission, 506 F.2d 33, 38 (D.C.Cir.1974)). Judge Scalia explained that, had the Administrator's comments bound his successors to pursue a particular course of action, the extensive administrative process of notice and comment rulemaking would have been necessary. Ibid.
 
 
 17
 Of particular importance here, Judge Scalia made it clear that the question before him was not one of the ripeness of the question for judicial review. He stated that "[t]he fact that it is not yet certain which particular states will receive SIP notices ... may be relevant to the question of when legal challenge to the findings would be ripe, but does not convert them into a mere general statement of policy or a procedural rule." Ibid. (emphasis in original). This statement, along with his reliance on cases such as National Asphalt Pavement Ass'n v. Train, 539 F.2d 775 (D.C.Cir.1976), which involved the question of when notice and comment rulemaking is required, indicate that Judge Scalia did not see Thomas as a case about ripeness; he saw it as a case about the definition and consequences of a particular agency administrator's statement. Thus, petitioners' reliance on Thomas as support for their position that this case is justiciable is misplaced.
 
 
 18
 We find that the language of the statute, as interpreted by the relevant precedents, is clear: the issuance of a notice of deficiency and the request for a revised SIP is not final agency action subject to judicial review. It in no way alters the obligations of the parties in either a practical or legal sense. It is impossible to anticipate which of the many available alternative strategies the State and the EPA will pursue. If the State declines to submit a revised SIP, with reasons for that choice, the EPA could accept that decision or propose its own revision. On the other hand, if the State proposes a revised SIP, the EPA could adopt it, either in whole or in part, or order further study, or reject the revision and design its own. There is no way of knowing which of the many available courses of action either the State or the EPA will choose. Until the State responds to the EPA's request for revision, and the EPA's subsequent actions become real rather than merely speculative, no legally cognizable harm has been visited.
 
 
 19
 Therefore, this case is not yet ripe for judicial review, and this court is without jurisdiction to hear this appeal. Consequently, we need not reach the merits of the petitioners' motion for a stay, or the State's motion to intervene. The petition for review is DISMISSED.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation